DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Charles Lester Vaught, appeals the decision of the Summit County Court of Common Pleas convicting him of sexual battery. We affirm.
 I. {¶ 2} Appellant resided in Barberton, Ohio, in a single-family home that had been converted from a three-unit apartment building. The home had a large common area between two living spaces. Appellant and his wife occupied one living space, while Appellant's son D.V., his wife, and their two children occupied the other. The residents were able to move freely between the two living spaces and throughout the common areas.
 {¶ 3} D.V. had a son and a daughter by a previous marriage, both minors at the times relevant to this case, who came to visit D.V. every other weekend. D.V.'s daughter, the victim in this case, stayed in a bedroom on the same side of the home as Appellant's living quarters, adjacent to the common kitchen space, when she stayed for the weekend.
 {¶ 4} One evening in August or September, 2003, around the time of the victim's sixteenth birthday and while the victim was visiting D.V. for the weekend, the victim and Appellant were watching television together in the victim's room. The victim was lying on her stomach on the bed and Appellant was sitting in a chair next to the bed. The bedroom door was closed, but D.V. and other family members were moving throughout the remainder of the house, including the common kitchen area. Although the facts are somewhat disputed from this point, it is undisputed that the victim asked Appellant to scratch either her hand (according to Appellant) or an itch on her back (according to the victim). In any case, Appellant complied with her request, but continued to reach underneath her pajamas to scratch her leg and her back. At one point, Appellant pulled down the victim's pajama bottoms and scratched her buttocks underneath her underwear. Appellant testified that he was getting tired of scratching after about 20 or 30 minutes, while he was scratching her leg under her pajamas, and that he intended to "smack her on her butt and tell her that's it, I am done" but that he accidentally "caught her in her vagina with [his] finger." The victim testified that the penetration was painful.
 {¶ 5} The victim did not tell her mother about the incident until approximately a year and a half later. The victim's mother notified police. When Appellant learned that he was the subject of a police investigation, he went to the police station to speak with the investigating detective. This interview was recorded on video. During the interview, Appellant admitted that he had slightly penetrated the victim, although he contended that it was an accident.
 {¶ 6} Appellant was later indicted for sexual battery pursuant to R.C. 2907.03(A)(5), a third-degree felony. A bench trial was held, at which the video was played and admitted into evidence. The victim, her mother, and a Barberton police detective testified for the State, and Appellant testified on his own behalf. The trial court found Appellant guilty of sexual battery, sentenced him to three years in prison, and classified him as a sexually oriented offender. Appellant timely filed this appeal, raising two assignments of error.
 II. A. First Assignment of Error
"THE TRIAL COURT ERRED IN FINDING THAT APPELLANT WAS IN LOCO PARENTIS[,] WHICH IS AN ESSENTIAL ELEMENT OF SEXUAL BATTERY."
 {¶ 7} R.C. 2907.03(A)(5) provides:
"No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."
 {¶ 8} Appellant has not stated the applicable standard of review for this assignment of error, as required by Loc.R. 7(A)(7). Because in loco parentis status is a question of fact,State v. Caton (2000), 137 Ohio App.3d 742, 750, we will assume, as the State did in its brief, that Appellant challenges the trial court's decision on the basis that the evidence was insufficient to support a finding that Appellant was in loco parentis.
 {¶ 9} The Ohio Revised Code does not define the term "in loco parentis" as used in R.C. 2907.03(A)(5). The Supreme Court of Ohio, quoting Black's Law Dictionary (6 Ed. 1990) 787, has defined "in loco parentis" as "charged, factitiously, with a parent's rights, duties, and responsibilities." State v. Noggle
(1993), 67 Ohio St.3d 31, 33. Based on that definition, the Court further stated that a person in loco parentis is one "who has assumed the dominant parental role and is relied upon by the child for support." Id. at paragraph one of the syllabus.
 {¶ 10} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether the evidence produced satisfies each of the elements of the crime. See State v. Getsy (1998),84 Ohio St.3d 180, 193. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 11} In Noggle, the Court considered the definition of in loco parentis in the context of a schoolteacher who had engaged in sexual conduct with a student. The Court held that the General Assembly intended (A)(5) as an anti-incest provision — albeit slightly expanded to apply to other persons with parental
authority who might take advantage of their authoritative positions — and did not intend it to apply to teachers. Id. at 33. The General Assembly responded to Noggle by enacting R.C.2907.03(A)(7), which prohibits sexual conduct between a minor and "a teacher, administrator, coach, or other person in authority employed by or serving in a school" where the victim is a student. R.C. 2907.03(A)(7); see, also, State v. Shipley, 9th Dist. No. 03CA008275, 2004-Ohio-434, at ¶ 80.
 {¶ 12} In the present case, the victim stayed with her father and her grandparents for an entire weekend every two weeks. The relationship was a close familial one, not a teacher-pupil relationship, and Appellant testified that he and the victim had been close throughout her entire life. Even though Appellant testified that he never had to discipline his granddaughter and that he didn't believe in interfering with D.V.'s disciplinary authority by exercising his own discipline, it is not a prerequisite to in loco parentis status that the person actually make or enforce rules. It is sufficient for the person acting in loco parentis to be an authority figure, with the ability to exercise an inherent parent-like power over a vulnerable child. See State v. Funk, 10th Dist. No. 05AP-230, 2006-Ohio-2068 at ¶ 95-96, citing State v. Dye (1998), 82 Ohio St.3d 323. The legislature's intent in enacting R.C. 2907.03 was to deter sexual conduct "in a variety of situations where the offender takes unconscionable advantage of the victim." Id. at ¶ 97, quoting 1974 Committee Comment to H.B. 511.
 {¶ 13} The victim's mother testified that D.V. was most often still at work when she dropped the children off on Friday afternoons, and that she dropped the children off to their grandparents' care. At the time of the incident, although D.V. was home from work, the victim was alone in a bedroom with appellant, with the door closed, essentially making Appellant the authority figure in the room. The victim testified that she hesitated to tell anyone about the incident afterwards because of the effects that it might have on her family members and that even when her grandfather had touched her before in ways that made her uncomfortable, she did not complain because she "didn't think a grandfather would do that." It does not matter that the victim was only in her grandfather's care for brief periods of time. See Funk at ¶ 95-96, citing Dye, supra. It is more significant that Appellant was an authority figure similar to a parent who was alone with the victim, and that Appellant's relationship of trust and authority with the victim facilitated his conduct. See id. at ¶ 99.
 {¶ 14} Furthermore, Appellant testified that when he and his wife purchased the house, they did so intending for D.V.'s family to move in with them because D.V. had encountered some financial difficulty. There was also some testimony tending to indicate that D.V. had some difficulty keeping up with his share of the household expenses. A rational finder of fact could have determined that Appellant was essentially providing a home for D.V.'s entire family, including the victim when she came to visit.
 {¶ 15} Viewing all this evidence in the light most favorable to the State, a rational trier of fact could find that Appellant was the main source of support for D.V.'s entire family, including the victim on weekends when she stayed at her grandparents' home. We cannot say as a matter of law that the State failed to prove that Appellant was acting in loco parentis. Accordingly, the first assignment of error is overruled.
 B. Second Assignment of Error
"THE TRIAL COURT'S VERDICT OF GUILTY, AS TO THE SOLE COUNT IN THE INDICTMENT CHARGING APPELLANT WITH SEXUAL BATTERY AGAINST [THE VICTIM] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} Appellant next argues that the trial court's finding of guilt was contrary to the manifest weight of the evidence at trial. Manifest weight is a question of fact. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. If the trial court's judgment was against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. In the special case of a jury verdict, however, the panel must be unanimous in order to reverse. Id. at paragraph four of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Constitution. Because reversal on manifest weight grounds is not a question of law, it is not an acquittal but instead is akin to a deadlocked jury from which retrial is allowed. Id. at 388, citing Tibbs v. Florida (1982),457 U.S. 31, 42.
 {¶ 17} In a manifest weight analysis, an appellate court essentially undertakes a three-step, sequential inquiry: (1) whether the State's account was believable based upon the evidence; (2) and if so, whether it was more believable than the defendant's version of the evidence; (3) but if not, whether the State's case was so unbelievable or unpersuasive as to undermine the integrity of the factfinder's finding of guilt and cause one to question whether justice was done. See Getsy,84 Ohio St.3d at 193. Obviously, "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin,148 Ohio App.3d 293, 2002-Ohio-3410, at ¶ 26.
 {¶ 18} An appellate court may not merely substitute its view for that of the factfinder, but must find that the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Emphasis added.) Thompkins, 78 Ohio St.3d at 387. See, also, id at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 19} Appellant admitted that his finger penetrated the victim, which constitutes sexual conduct no matter how slight the penetration might have been. R.C. 2907.01(A). The nature of Appellant's relationship to the family, including the entirety of the family's living arrangement and financial situation and especially the relationship of trust and authority that he developed with his granddaughter over time, suggests that Appellant was acting in loco parentis. No specific culpable mental state must be shown to prove a violation of R.C.2907.01(A). Furthermore, the defense of accident, which Appellant attempted to raise, is not an affirmative defense in Ohio; it serves only to negate the element of intent in crimes where intent must be shown. State v. Poole (1973), 33 Ohio St.2d 18,20. Therefore, it has no applicability in this case.
 {¶ 20} We cannot find that the trial judge lost his way in finding Appellant guilty of sexual battery. The second assignment of error is overruled.
 III. {¶ 21} Both assignments of error are overruled. Appellant's conviction in the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J. Moore, J. concur.