JOURNAL ENTRY AND OPINION
{¶ 1} After being convicted by the trial court of sexual battery in violation of R.C. 2907.03(A)(7), defendant-appellant George Thomas appeals with three assignments of error.
 {¶ 2} Thomas first argues the trial court improperly denied his motion to suppress his written statement since the evidence demonstrated it was coerced. Thomas admitted in that statement he had sexual intercourse with a female student while he was employed as a security guard at the school she attended. Thomas additionally argues his conviction is not supported by either sufficient evidence or the manifest weight of the evidence. Thomas contends the evidence failed to prove his *Page 2 
employment constituted a position of "authority" as prescribed by R.C.2907.03(A)(7).
 {¶ 3} Upon a review of the record, this court disagrees with Thomas' arguments. His conviction, therefore, is affirmed.
 {¶ 4} According to the testimony of the witnesses, the South Euclid-Lyndhurst School District hired Thomas as a part-time security guard in approximately 1999. Thomas was assigned to the district's high school, commonly referred to as "Brush High."[1]
 {¶ 5} Pursuant to his assigned duties as a security guard, Thomas could, among other things, "police the hallways," conduct "unruly students * * * to the [school] office," verify the status of "individuals * * * entering and leaving school property," and, further, assist the police "as necessary," the school administrators "in student searches," and school bus drivers in "handling" disturbances. Security guards were expected, generally, to "enforce school policy."
 {¶ 6} In February 2004, Roger Goudy, the school district's Director of Business Affairs, received notification that an allegation against Thomas had been made, accusing him of sexual impropriety in 2003 with a female Brush High student. Goudy forwarded the allegation to Will Van Horne, who was the district's Director of Security, and, thus, Thomas' supervisor. *Page 3 
 {¶ 7} Van Horne called the student, who by that time was eighteen years old, into the Brush High assistant principal's office; there, Van Horne, along with the assistant principal and a woman administrator, attempted to interview her concerning the allegation. The student, "T"[2] was not forthcoming with any information. At that point, Van Horne referred the matter to the police department.
 {¶ 8} On February 14, 2004 Det. Kevin Nietert received the assignment to conduct an investigation of the allegation. His first step was to conduct an interview of T, who came to the police station with her grandmother. However, Nietert found T to be uncooperative. Sensing T was being deceitful in her denials that an incident occurred, Nietert asked her if she would be "willing to take a lie detector test." At that point, T asked to speak to Nietert alone.
 {¶ 9} Once her grandmother left the room, T admitted she met Thomas through his employment at her high school. She stated that sometime in mid-May 2003, before summer vacation, she had invited him to her home. She stated she then went with him to a motel, where Thomas rented a room and they had consensual vaginal intercourse.
 {¶ 10} Nietert then arranged to approach Thomas; Van Horne summoned Thomas to the Brush High office. Nietert informed Thomas that an allegation had been made that he engaged in unlawful sexual conduct with a female student. *Page 4 
Nietert indicated he would have to transport Thomas to the police station. However, Nietert believed there was no need to "embarrass" Thomas by putting him in handcuffs.
 {¶ 11} Upon their arrival, Nietert provided a written explanation and also orally informed Thomas of his "Miranda" rights before asking Thomas if he wanted to make any statements. Thomas declined to do so. Nietert at that point began to rise from his chair, informing Thomas that he would have to be processed and held on the charge.
 {¶ 12} Thomas "immediately indicated * * * that he wanted to cooperate" with Nietert's investigation. After Thomas acknowledged "some responsibility" for the allegation, Nietert asked if Thomas wished to provide a written statement. Thomas agreed.
 {¶ 13} The written statement contained yet another advisement of the "Miranda warnings." Nevertheless, Thomas wrote that he "met a female at Brush two years ago," who "would give [him] information] on who was about to fight after school, or who was selling drugs in the building. [They] got together one weekend and had sex * * * at some motel on Euclid," but he had "not been with her since." After Thomas provided this written admission, Nietert permitted him to leave the police station, but took the results of the investigation to the grand jury. *Page 5 
 {¶ 14} On March 17, 2004 the grand jury issued an indictment against Thomas that charged him with one count of sexual battery in violation of R.C. 2907.03(A)(7). Although he challenged the indictment on constitutional grounds,[3] his case eventually proceeded to a trial to the bench.
 {¶ 15} The trial court first held a hearing on Thomas' motion to suppress evidence, but, after considering Nietert's testimony, denied the motion. When the case proceeded to trial, the state presented the testimony of four witnesses, viz., Van Horne, Goudy, T and Nietert. Thomas elected to present no evidence.
 {¶ 16} The trial court ultimately found Thomas guilty as charged. The court classified him a "sexually oriented offender" before sentencing him to a two-year term of conditional community control.
 {¶ 17} Thomas challenges his conviction in this appeal with the following three assignments of error.
 "I. The trial court committed reversible error by admitting the alleged written confession of Appellant and any testimony of the contents of the alleged written confession due to the fact that the confession was not made voluntarily by Appellant defendant and was in fact obtained through coercion, intimidation and threats. *Page 6 
 "II. The trial court erred in denying Appellant's motion for acquittal as to the charges [sic] when the state failed to present sufficient evidence to sustain a conviction.
 "III. Appellant's conviction is against the manifest weight of the evidence."
 {¶ 18} In his first assignment of error, Thomas argues that, when considered under the totality of the circumstances, his written statement was not provided "voluntarily," and, therefore, the trial court erred in denying his motion to suppress that evidence. He contends his written statement was obtained by coercion.
 {¶ 19} In determining whether a statement is voluntary, the court must consider the totality of circumstances; these include the suspect's age, mentality and prior criminal experience, the length, intensity and frequency of interrogation, the existence of physical deprivation or mistreatment, and the existence of threat or inducement. State v.Brinkley, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 57. "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus.
 {¶ 20} At the hearing held on Thomas' motion to suppress evidence, Nietert testified that he took Thomas into custody at Brush High at approximately 9:30 a.m. *Page 7 
and transported him to the police station. Nietert stated that, upon their arrival, Thomas did not wish to provide any information regarding the investigation.
 {¶ 21} According to Nietert, he at that point simply rose from his chair and informed Thomas that "we were going to * * * fingerprint him and photograph him [and] place him in the jail." Thomas "indicated * * * that he didn't want to be placed into our jail facility. I * * * told him that I would be more than happy to sit down and listen to what he had to say. We again addressed the fact that there [wa]s an investigation, and * * * he acknowledged then that he did have some responsibility * * *." When Nietert asked if Thomas wanted to provide a written statement, Thomas agreed to do so. The time on Thomas' statement indicates he made it at 10:20 a.m.
 {¶ 22} The trial court received testimony that Thomas was in his mid-thirties in age, and had been a security guard for a number of years. The evidence thus proved that Thomas was subject to a very short period of "interrogation," and was neither mistreated nor threatened. Under the totality of the circumstances, no coercion occurred.
 {¶ 23} The trial court, therefore, appropriately denied Thomas' motion to suppress evidence. His first assignment of error is overruled.
 {¶ 24} Thomas argues in his second and third assignments of error that his conviction is unsupported by either sufficient evidence or the manifest weight of the evidence. He contends that the state failed to prove an element of the offense, viz., *Page 8 
that he was a "person in authority" over T. Thus, he claims the trial court erred both in denying his motion for acquittal and in convicting him of violating R.C. 2907.03(A)(7).
 {¶ 25} A defendant's motion for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 26} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin, supra at 175.
 {¶ 27} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the factfinder to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. *Page 9 
 {¶ 28} R.C. 2907.03(A)(7), in relevant part, prohibits a person from engaging in sexual conduct with another who is not his spouse, when the offender "is a teacher, administrator, coach, or other person in authority employed by or serving in a school * * * the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school."
 {¶ 29} It is not a "prerequisite" to the statute "that the personactually make or enforce rules," rather, "[i]t is sufficient for the person acting * * * to be an authority figure, with the ability to exercise an inherent parent-like power over a vulnerable child." State v.Vaught, Summit App. No. 22846, 2006-Ohio-4727, ¶ 12 (emphasis added). Nevertheless, as previously noted, a "critical aspect" of the position of school security guard "is to enforce school rules and regulations as a means to ensure the students' safety." State v. Thomas, Cuyahoga App. No. 85155, 2005-Ohio-2631, T|15.
 {¶ 30} Indeed, the trial court heard testimony in this case that Thomas was employed by the school district as a security guard, and, according to Van Horne, a security guard's primary purpose was to "enforce" school rules. Van Horne testified security guards possessed authority to perform many "police" functions, including compelling students to submit to them. Thomas was assigned to Brush High. T testified she attended school there at the time of their tryst and that she and Thomas were not married. Obviously, this evidence was sufficient to prove each of the *Page 10 
necessary elements of the offense; therefore, the trial court did not err in denying Thomas' motion for acquittal. State v. Vaught, supra at ¶ 15.
 {¶ 31} Moreover, the manifest weight of the evidence supported Thomas' conviction. Although T indicated she consented to the sexual encounter, she also indicated she never would have thought of inviting Thomas to become intimate with her unless he had initiated the relationship by speaking to her at school.
 {¶ 32} The statute "can clearly be understood by ordinary people" to prohibit "any person in a position of authority over a minor * * * from taking advantage of his position * * * . Ordinary common sense informs an individual when he is in a position of authority and has disciplinary control, whether temporary or occasional, over a minor."State v. Gorenflo (May 23, 2001), Marion App. No. 9-2000-101. The trial court reasonably could conclude, based upon the evidence, that Thomas' sexual encounter with a student occurred because he used his position to "take advantage."
 {¶ 33} Accordingly, Thomas' second and third assignments of error also are overruled.
 {¶ 34} Thomas' conviction is affirmed. It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. COLLEEN CONWAY COONEY, P.J., AND MARY EILEEN KILBANE, J., CONCUR
[1] Quotes indicate testimony given by a witness during the proceeding below.
[2] This Court's policy is to withhold the names of victims of sexual offenses.
[3] See, State v. Thomas, Cuyahoga App. No. 85155, 2005-Ohio-2631, discretionary appeal not allowed, State v. Thomas, 106 Ohio St.3d 1534,2005-Ohio-5859. *Page 1