OPINION
{¶ 1} Defendant-appellant Glenn A. Hess appeals from his conviction and sentence for one count of theft by deception, in violation of R.C. § 2913.02(A)(3), a felony of the fifth degree.
 {¶ 2} On July 13, 2005, Hess was indicted for one count of theft by deception. Hess *Page 2 
entered a plea of not guilty on July 21, 2005. After a jury trial held on February 21 and 22, 2006, Hess was found guilty of theft by deception. In a termination entry filed on May 11, 2006, the trial court sentenced Hess to a term of five years of community control. He was also ordered to pay restitution in the amount of $952.85, as well as comply with other terms of probation supervision. Hess filed a timely notice of appeal with this Court on June 6, 2006.
 I {¶ 3} In December of 2000, Hess brought a 1988 Buick Regal, belonging to his mother, Virginia Vindick, to Speedy Muffler in Huber Heights, Ohio, in order to have the struts replaced. Upon completion of the work, Speedy Muffler provided a lifetime warranty on the replaced parts. Since the vehicle belonged to Vindick, however, the warranty was in her name and was non-transferable. It is undisputed that Vindick passed away in March of 2003, and Hess took title to the vehicle which he then had registered in his name.
 {¶ 4} On April 13, 2005, Hess contacted Speedy Muffler and arranged for repairs to be made on the vehicle. Dan Banks, the manager of Speedy Muffler, testified that Hess contacted him and told him that his mother was advancing in years, and he wanted the vehicle to be inspected for any possible problems. Banks further testified that Hess stated that his mother was sick and would not be able to personally deliver the vehicle to Speedy Muffler for the requested repairs. Thus, Banks testified that he told Hess that it would be acceptable if Hess brought the vehicle in provided that he had his mother's identification with a blank check signed by her for payment. At trial, Hess contradicted Banks' testimony and testified that he told the employees at Speedy Muffler that he was the owner of the vehicle. Hess further testified that, at no time, did he try to deceive them into believing that his mother was still alive so he could utilize the *Page 3 
warranty issued in her name.
 {¶ 5} On April 14, 2005, Hess delivered the vehicle to Speedy Muffler. Once there, Hess spoke with an assistant manager, Shawn Sprinkle, and provided him with a list of repairs to be done on the vehicle. Included in the list was a request that the struts be replaced pursuant to the lifetime warranty issued to Vindick from the repairs completed in 2000. Speedy Muffler completed the requested repairs and called Hess to retrieve his vehicle and remit payment. Hess informed Speedy Muffler that he did not have any means to get there and requested that someone pick him up at his residence. Speedy Muffler sent one its technicians out in his personal vehicle to pick up Hess. Once the technician, Jamie Chassereau, arrived, however, Hess refused to ride back with him and requested that his vehicle be brought to him. Chassereau left and returned shortly with Hess' vehicle. After a brief inspection, Hess complained that the repairs were not completed properly. Hess informed Chassereau that he would not give him a ride back to Speedy Muffler unless he signed a piece of paper acknowledging that the repairs were not completed satisfactorily. Chassereau testified that he signed the paper, and Hess drove him back to Speedy Muffler.
 {¶ 6} Once they arrived, Chassereau told Hess that he need to speak to the assistant manager about his complaints as well as pay his bill for the repairs that were done. Hess refused to speak with anyone, and as soon as Chassereau exited the vehicle, he drove out of Speedy Muffler's parking lot. Hess never returned at any point to discuss his complaints or pay his bill. Although Banks did speak to Hess over the phone concerning the repairs and delinquent bill, Hess still refused to remit payment for the repairs that were done. Banks informed the Huber Heights Police of Hess' actions, and he was arrested at his residence. *Page 4 
 {¶ 7} As previously mentioned, Hess was subsequently found guilty of theft by deception and sentenced to five (5) months of probation, as well as restitution for the actual price of the repairs done to the vehicle. It is from this judgment that Hess now appeals.
 II {¶ 8} Hess' first assignment of error is as follows:
 {¶ 9} "MR. HESS' CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In his first assignment, Hess contends that his conviction for theft by deception is not supported by sufficient evidence because the State failed to establish all of the necessary elements of the crime. Additionally, Hess argues that his conviction is against the manifest weight of the evidence "because the State failed to introduce a greater amount of `competent, credible evidence in support of the elements necessary [to convict]' than that which supported an acquittal." We disagree.
 {¶ 11} "`[Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed.1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372,683 N.E.2d 1096, citing Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 *Page 5 
L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 12} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 13} To obtain a conviction against Hess under R.C. § 2913.02(A)(3), the State was required to prove that he, with the purpose to deprive Speedy Muffler of property or services, knowingly exerted control over said property or services by deception. Hess argues that the State failed to produce sufficient evidence which demonstrated: 1) that he intended to deprive Speedy Muffler of property or services; *Page 6 
2) that Speedy Muffler performed any work on the vehicle; 3) the value of any services that Speedy Muffler performed; and 4) that he deceived Speedy Muffler in any way.
 {¶ 14} The evidence adduced at trial, when viewed in a light most favorable to the State, clearly demonstrates that Hess intended to deprive Speedy Muffler of property or services through deception. Banks, the manager of Speedy Muffler, testified that Hess called him and stated that his mother wanted certain repairs to be made on her car. Based on the statements made by Hess, Banks believed that the vehicle belonged to his mother, whose name the warranty was under.
 {¶ 15} Sprinkle, the assistant manager, testified that Hess claimed that the repairs were being made for his mother. Further, Sprinkle testified that Hess produced: 1) a letter purportedly signed by his mother requesting that certain repairs be made to the vehicle; 2) a blank check purportedly signed by his mother to be used for payment for the repairs; and 3) his mother's identification card in order to validate the check.
 {¶ 16} When he and Hess were driving back to Speedy Muffler, Chassereau provided the following testimony:
 {¶ 17} "The State: Did the defendant [Hess] ever bring up the subject of his mother during the course of your ride from his house to Speedy [Muffler]?
 {¶ 18} "Chassereau: Yeah, he actually did bring up his mom. He was telling me that he had to make sure that everything on the car was right for his mom because it was actually her car and he was just getting the work done for her, so she didn't have to do the running around. But he just wanted to make sure everything was done right on the car, all the work was done properly, because it was going to be — his mother *Page 7 
was going to be the one that was driving the vehicle."
 {¶ 19} It is undisputed that at the time the repairs were made, Hess was the registered owner of the vehicle, and his mother had been deceased for several years. The warranty on the struts, however, was still in Hess' mother's name which he attempted to utilize in order to receive essentially free parts for his car. Thus, the evidence is sufficient to establish that a rational finder of fact could have found that Hess intended to deprive Speedy Muffler of property and services by deception.
 {¶ 20} Lastly, the evidence, when viewed in a light most favorable to the State, clearly establishes that Hess obtained goods and services from Speedy Muffler, and sufficient evidence of the value of said goods and services was also adduced at trial. The assistant manager, Sprinkle testified that the following work was performed on Hess' vehicle:
 {¶ 21} "The State: What work was done on the car on April the 16th, `05?
 {¶ 22} "Sprinkle: We put struts on it. I can remember that. We tuned it up, power steering flush, transmission flush, installed customer mirror. But I can't remember exact [sic] everything we did. The — I can read it off the paper and say what I did.
 {¶ 23} "The State: Well, looking at State's Exhibit No. 4, would that refresh your memory?
 {¶ 24} "Sprinkle: Yeah. We did a trans flush, power steering flush, tune-up. We did — I think — no, power steering flush and a three-step fuel system cleaning.
 {¶ 25} "The State: What did the bill come to on that date?
 {¶ 26} "Sprinkle: $952.85. *Page 8 
 {¶ 27} * * *
 {¶ 28} "The State: And what charge, if any, did you make for the actual physical part, the struts? What charge did you indicate for that?
 {¶ 29} "Sprinkle: Labor.
 {¶ 30} "The State: No charge for the struts?
 {¶ 31} "Sprinkle: No charge for the struts.
 {¶ 32} "The State: Only labor.
 {¶ 33} "Sprinkle: Just labor.
 {¶ 34} "The State: What did the labor come to?
 {¶ 35} "Sprinkle: Struts labor was 340.40.
 {¶ 36} "The State: To install all four struts?
 {¶ 37} "Sprinkle: Yeah.
 {¶ 38} "The State: And who did you bill that to then?
 {¶ 39} * * *
 {¶ 40} "Sprinkle: It would be Virginia.
 {¶ 41} "The State: Virginia Vindick?
 {¶ 42} "Sprinkle: M-hum.
 {¶ 43} "The State: And why did you bill it to her?
 {¶ 44} "Sprinkle: Because I assumed it was her car.
 {¶ 45} "The State: What did you base that assumption on, please?
 {¶ 46} "Sprinkle: The IDs, and him [Hess] coming in and said he had it approved and spoke to the manager prior to that."
 {¶ 47} Further, Hess' own testimony clearly indicates that he was aware that *Page 9 
Speedy Muffler performed the work on his vehicle that he requested be done in the name of his deceased mother:
 {¶ 48} "Defense Counsel: Did you have a list of items with you at that time of what you wanted to have done to the car?
 {¶ 49} "Hess: Yes, sir.
 {¶ 50} "Q: And did you discuss those with whoever you spoke to?
 {¶ 51} "Hess: Yes, sir. I wanted some detail with — I went into some detail with Mr. Banks the first day, and I went into very, very detailed description of what I wanted done with, I guess, Mr. Sprinkle the day that I dropped the vehicle to [sic] off to have the repair work done."
 {¶ 52} With respect to the cost of the services and goods Hess obtained, ample testimony and an invoice from Speedy Muffler was offered by the State which established that the bill came to a total of $952.85 with the warranty in operation which provided the struts at no cost to Hess. Sprinkle testified that Hess was charged for the $340.40 for the labor cost of installing the struts, but he was not charged for the actual struts because they were under the warranty in Hess' mother's name. Banks testified that since the warranty was void, as Vindick had passed away three years prior to the date the vehicle was worked on, Hess was liable for the cost of the struts which totaled $358.96, thereby bringing the total sum for which Hess was responsible to well over $1,300.00. It is undisputed that Hess has not paid any part of the bill for the work performed on his vehicle. In light of this, the State adduced sufficient evidence at trial which established that the dollar amount which Hess deprived Speedy Muffler of exceeded the $500.00 necessary for a conviction under R.C. § 2913.02(A)(3). *Page 10 
 {¶ 53} Additionally, after reviewing the entire record and weighing all the reasonable inferences therein, we hold that the jury's verdict finding Hess guilty of theft by deception was clearly not against the manifest weight of the evidence.
 {¶ 54} Hess' first assignment of error is overruled.
 III {¶ 55} Hess' second assignment of error is as follows:
 {¶ 56} "MR. HESS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 57} In his second assignment, Hess contends that he received ineffective assistance of counsel at the trial level. In support of this assertion, Hess cites the following arguments: 1) failure of defense counsel to object to the admission of a prejudicial audio recording of Hess and Banks; and 2) failure of defense counsel to clarify the actual issues of the case and to highlight the essential elements of the crime of theft by deception.
 {¶ 58} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citingState v. Lytle (1976), *Page 11 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 59} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 60} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694.
 {¶ 61} Initially, Hess argues that defense counsel provided ineffective assistance of counsel for failing to object to the admission of State's Exhibit 5, a cassette recording of a conversation between he and Dan Banks, wherein Hess confirms his dissatisfaction with the work performed on his vehicle by Speedy Muffler. Hess asserts that the tape was not relevant to any of the elements to prove theft. *Page 12 
Further, Hess asserts that the exhibit unfairly prejudiced the jurors against him and misled them as to the ultimate issues in the case.
 {¶ 62} As noted by the State, the tape was provided by defense counsel prior to trial. Defense counsel's theory of the case at trial was that Hess was justified in not paying the bill he owed to Speedy Muffler because the work performed on the vehicle was unsatisfactory. The conversation between Hess and Banks on the tape demonstrates that Hess was not satisfied with the repairs. Defense counsel's decision to allow the tape to be played at trial, therefore, can be considered trial strategy. "Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel." State v. Martin (March 25, 2005), Montgomery App. No. 20610, 2005-Ohio-1369, citing State v. Clayton
(1980), 62 Ohio St.2d 45, 402 N.E.2d 1189. Under these circumstances, defense counsel's failure to object to the playing of the tape in the presence of the jurors does not constitute ineffective assistance.
 {¶ 63} In his remaining argument that his counsel's performance was deficient, Hess asserts that his counsel failed to clarify the actual issues in the case and highlight that the State failed to prove all of the elements of theft by deception. Specifically, Hess contends that defense counsel failed to articulate the differences in the State's theories of deception and failed to explain to the jury that it could only find Hess guilty of theft as charged "if they found deception based on the drive-off — not just based on the warranty." However, Hess provides no evidence from the record to support his claim in this regard. He simply points out that these alleged omissions on the part of trial counsel significantly prejudiced his defense without providing any explanation for his position. *Page 13 
 {¶ 64} "It is not enough for the defendant to assert that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet the test." United States v.Valenzuela-Bernal (1982), 458 U.S. 858, 866-867, 102 S.Ct. 3440, 3446. Mere speculation, therefore, is an insufficient basis upon which to find that Hess' trial counsel's performance fell below an objective standard of reasonableness. A thorough review of the record establishes that trial counsel had a clear theory of the case, namely that Hess did not deceive the employees at Speedy Muffler in order to receive the benefit of his deceased mother's warranty and was completely dissatisfied with the work performed on his vehicle. Defense counsel aggressively questioned all of the State's witnesses in order to persuade a finder of fact to reach the conclusion that Hess did not attempt to deceive anyone, but rather reacted reasonably to a bad situation brought on by the actions of Speedy Muffler. The jury, however, chose to believe the State's version of events and found Hess guilty of theft by deception. The record does not support Hess' argument that defense counsel was ineffective.
 {¶ 65} Hess' second assignment of error is overruled.
 IV {¶ 66} Hess's third and final assignment of error is as follows:
 {¶ 67} "THE STATE IMPROPERLY CHARGED MR. HESS WITH CRIMINAL THEFT FOR ALLEGED NON-PAYMENT OF A CIVIL DEBT."
 {¶ 68} In his third and final assignment, Hess contends that he was improperly charged with criminal theft for what amounted to non-payment of a civil debt. Thus, Hess argues that the State exceeded its authority under R.C. § 2913.01(A) by charging *Page 14 
him with criminal theft. The State argues that this assignment has no merit and that Hess' actions demonstrate that he was properly charged and convicted of theft by deception.
 {¶ 69} The evidence presented by the State at trial demonstrates that Hess attempted to unlawfully utilize his deceased mother's warranty with Speedy Muffler for his own financial gain. Moreover, a finder of fact could reasonably infer from Hess' actions that he never intended to pay his bill at Speedy Muffler for the services performed on his vehicle. Simply put, the evidence established beyond a reasonable doubt that Hess contracted for goods and services that he never intended to pay for. This is clearly not a case where a consumer legally attempted to dispute a civil debt. Based on the evidence it had before it, the State acted appropriately when it charged Hess with theft by deception.
 {¶ 70} Hess' third assignment is overruled.
 V {¶ 71} All of Hess' assignments having been overruled, the judgment of the trial court is affirmed.
 FAIN, J. and GRADY, J., concur. *Page 1