DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Leslie N., has appealed from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, R.B., and placed him in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.
 I {¶ 2} Leslie had her parental rights to four other children involuntarily terminated in a previous case. See In re J.H., S.H., R.H., L.N., 9th Dist. No. 07CA009168, 2007-Ohio-5765. The present case concerns Leslie's parental rights to R.B., who was born after the conclusion of the permanent custody hearing in *Page 2 
the earlier case. Ron B., the biological father of R.B. was not a party to the first case, but voluntarily agreed to terminate his parental rights to R.B. in the present case.
 {¶ 3} LCCS had been involved with Leslie since April 2004 in regard to her four older children. See In re J.H., 2007-Ohio-5765, at ¶ 2 — ¶ 3. That case was initiated when Anthony H., the man with whom Leslie was living at the time, created a hostage situation involving two of Leslie's children and resulting in a gunshot wound to their maternal grandmother. In addition to concerns of domestic violence and Leslie allowing her children to be placed in dangerous situations, LCCS was concerned with Leslie's failure to address her own mental health issues, her eviction from her home, the poor hygiene of her children, inappropriate supervision of the children, failure to keep appointments, and behavioral problems exhibited by the children in school. Id. at ¶ 4 — ¶ 5. After nearly two years of case planning efforts, Leslie had still not obtained safe, stable housing, had not been able to keep the children safe from dangerous individuals, had not been able to utilize skills she should have learned in parenting and anger management classes, resisted the help of service providers, and had not resolved her own mental health issues. Ultimately, the trial court granted permanent custody of these four children to LCCS, and that judgment was affirmed by this Court. Id. at ¶ 40. *Page 3 
 {¶ 4} When R.B. was born on January 25, 2007, LCCS was concerned that Leslie was unable to parent and provide for him, and, therefore, on January 29, 2007, filed a complaint alleging dependency and seeking temporary custody. The agency believed that the child would be in imminent risk of danger or harm if he were released from the hospital to the mother's care.
 {¶ 5} Based on the fact that the mother had had her parental rights terminated with respect to siblings of R.B., the trial court granted the agency's motion for an order that it would not be required to make reasonable efforts to return the child to his home. See R.C.2151.419(A)(2)(e). On April 4, 2007, the trial court adjudicated the child to be dependent and placed him in the temporary custody of the agency.
 {¶ 6} On July 23, 2007, LCCS moved for permanent custody of R.B. Following a hearing on the motion, the trial court terminated the mother's parental rights to R.B. and placed the child in the permanent custody of the agency. Leslie has timely appealed and has assigned one error for review.
 II Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF O.R.C. 2151.414, THE FOURTEENTH AND NINTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 1 OF THE OHIO CONSTITUTION, WHEN IT TERMINATED THE PARENTAL RIGHTS OF APPELLANT AND GRANTED PERMANENT CUSTODY OF THE MINOR CHILDREN TO LORAIN COUNTY CHILDREN SERVICES, WHERE THE *Page 4 
EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF."
 {¶ 7} Within the argument supporting her assignment of error, Leslie has made five specific claims. She has challenged the trial court findings on both prongs of the permanent custody test, has challenged the constitutionality of two portions of the permanent custody statutes, and has asserted ineffective assistance of her trial counsel. Each argument will be addressed in turn.
 {¶ 8} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and (B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. *Page 5 
 {¶ 9} In this case, the trial court found that the child could not be returned to either parent or should not be returned within a reasonable time and that it was in the best interest of the child to be placed in the permanent custody of the agency. R.C. 2151.414(E) provides that the trial court is required to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if the court determines that one of the factors set forth in that section exist as to each of the child's parents. In this case, the trial court relied on two such factors: (1) R.C. 2151.414(E)(1), that the parent had failed continuously and repeatedly to substantially remedy the conditions that led to the child's placement outside the home, and R.C. 2151.414(E)(11), that Leslie's parental rights had been involuntarily terminated regarding siblings of R.B.
 {¶ 10} Leslie has argued that the trial court's reliance on R.C.2151.414(E)(1) was erroneous because that statute is premised upon "reasonable case planning and diligent efforts" by the agency towards reunification, and that, because of the "reasonable efforts bypass," there was no case planning in this case. Leslie has made no argument, however, contesting the trial court's alternative predicate finding based on R.C. 2151.414(E)(11), the fact that Leslie's parental rights had been terminated as to siblings of R.B. Because the trial court was only obligated to make a finding on one of the predicate factors in R.C.2151.414(E) in order to conclude that a child cannot or should not be placed with either parent and *Page 6 
because Leslie has not challenged the finding based on R.C.2151.414(E)(11), any error regarding R.C. 2151.414(E)(1) is harmless.
 {¶ 11} Leslie has next challenged the trial court's finding that it was in the best interest of R.B. to be placed in the permanent custody of the agency. When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at *3; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24. *Page 7 
 {¶ 12} Leslie has asserted that the best interest finding was unsupported by clear and convincing evidence. In support of her argument, Leslie has claimed that she had a bond with her child, visited with him on a regular basis, and conducted herself in an appropriate manner during those visits. She has also asserted that the child responded to her in a positive way. A friend of the maternal grandmother testified on behalf of Leslie, stating that Leslie had babysat for her and that she trusted Leslie with her children. Leslie has contended that the trial court found against her simply because R.B. was doing well in foster care.
 {¶ 13} As stated above, the statutory scheme controlling the termination of parental rights requires that the trial court must consider all relevant factors, including the factors listed in R.C.2151.414(D), in order to determine the best interest of the child. See R.C. 2151.414(D). The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the children. The record did contain evidence that Leslie interacted well with R.B. during her one hour of weekly supervised visits. In considering the relationship between Leslie and R.B., however, the trial court was also entitled to consider that Leslie never progressed beyond supervised visits at the visitation center, created safety issues through her involvement with dangerous individuals, had a longstanding problem obtaining safe, stable housing, and that R.B. had medical needs which required regular medical attention by his caregiver. *Page 8 
 {¶ 14} The trial court expressed concern with Leslie's failure to cooperate or properly communicate with the LCCS caseworker. Terry Fair, the caseworker assigned to this case, had testified that Leslie refused to cooperate with her and refused to give her any information regarding her employment, housing, or dating relationships as they might impact the safety of the child. At the hearing, Leslie testified she was employed as a home health care worker and was on a four-week vacation at the time of the July 2007 hearing, but also testified she last worked in October — nine months earlier. Leslie's mother testified that Leslie had not worked for nearly a year. The guardian ad litem expressed concern with the mother's employment status and her ability to provide for the child. Despite requests by the caseworker, Leslie never provided her with pay stubs to document her employment.
 {¶ 15} As to housing, Leslie had failed to provide the caseworker with requested documentation of where she was living or planned to live. According to the caseworker, Leslie reported that she was purchasing a home in Elyria, but provided no documentation of that. At the permanent custody hearing, Leslie testified that she had recently been evicted from her apartment and was living with her mother. Although Leslie's mother testified that she was willing to allow her daughter and R.B. to stay with her until Leslie was able to get her own place, this grandmother admitted that she had had her own history with LCCS and that she had not even seen her grandson since he was taken from the hospital. The trial *Page 9 
court found that Leslie did not have appropriate housing and that housing had been an issue for her since 2004.
 {¶ 16} The trial court also expressed concern with Leslie's ability to provide a stable environment for her child. The prior case included a hostage situation created by the father of two of Leslie's children. In the present case, Caseworker Fair testified to reports of ongoing acts of violence between Leslie and the men with whom she has been involved. Fair also testified that Leslie had recently been convicted of domestic violence with George Alexander, her current boyfriend. Leslie initially disputed this assertion, but later admitted that she had pled no contest to a charge of domestic violence. The guardian ad litem did not believe that either parent could provide R.B. with a safe environment.
 {¶ 17} Caseworker Fair testified that she did not believe that Leslie could provide for this child due to her ongoing issues with mental health, inability to provide for R.B.'s basic needs, lack of independent housing, lack of employment, and ongoing violence with the men with whom she had relationships. Fair testified that she had observed no significant change in Leslie that would suggest a reduction of risk to the child as compared to the risks in the prior case.
 {¶ 18} The trial court found that R.B.'s caregiver, a paternal aunt, had been meeting his basic and medical needs. During the aunt's testimony, she testified that R.B. has food allergies, respiratory problems including asthma, and a condition involving acid reflux that causes him to throw up frequently. As a *Page 10 
result, she regularly takes the child to appointments with two medical specialists. She also utilizes the services of Help Me Grow. This relative was willing to adopt R.B. if permanent custody were granted.
 {¶ 19} The wishes of this infant were expressed by the guardian ad litem. See R.C. 2151.414(D)(2). In her report, the guardian ad litem stated her belief that it would be in the best interests of the child to be placed in the permanent custody of LCCS.
 {¶ 20} The custodial history of the child reflects that this child never resided with Leslie. The agency obtained custody directly from the hospital, believing that the child would be in danger if he were permitted to go home with Leslie. Leslie's visits with the child were said to be regular and appropriate, but never progressed beyond supervised weekly visits.
 {¶ 21} As to the fourth best interest factor, there was evidence before the trial court that the child was in need of a legally secure, permanent placement and that neither of the parents was able to provide that now or within a reasonable time. Caseworker Fair testified, in particular, that she did not believe Leslie could provide a safe home for this child. She believed that permanent custody was in the best interest of the child.
 {¶ 22} Finally, the fact that the mother has had four children permanently removed from her custody weighs against returning the child to her care. *Page 11 
 {¶ 23} In conclusion, it appears that the trial court considered each of the best interest factors included in R.C. 2151.414(D) and found that the evidence clearly and convincingly supported a finding that permanent custody was in the best interest of the child. Upon review, this Court does not conclude that the trial court erred in so finding.
 {¶ 24} Leslie has challenged the constitutionality of two portions of the statutes related to the termination of parental rights. She challenges the following: (1) R.C. 2151.414(B)(1)(d), satisfying the first prong of the permanent custody test where a child has been in the temporary custody of a children services agency for more than 12 months of the prior 22 months; (2) R.C. 2151.419(A)(2)(e), excusing a children services agency from making reasonable efforts to reunite a parent and child if the parent has had parental rights involuntarily terminated with respect to a sibling of the child. This Court finds no merit in either argument.
 {¶ 25} First, as to the challenge to the constitutionality of R.C.2151.414(B)(1)(d), the trial court did not rely on this provision for its finding on the first prong of the permanent custody test. Consequently, there is no prejudice to Leslie, no basis for a constitutional challenge, and no error.
 {¶ 26} Second, as to the appellate challenge to the constitutionality of R.C. 2151.419(A)(2)(e), the record indicates that there was no objection — either written or oral — to the constitutionality of this provision in the trial court, and this Court will not consider the question for the first time on appeal. State v. Awan (1986), *Page 12 22 Ohio St.3d 120, syllabus. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and * * * need not be heard for the first time on appeal." Id. It is fundamental that "`[a]n appellate court will not consider any error which * * * [the complaining party] could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" In re PieperChildren (1993), 85 Ohio App.3d 318, 328, quoting State v. Glaros
(1960), 170 Ohio St. 471, paragraph one of the syllabus. Consequently, this Court will not reach the merits of this challenge.
 {¶ 27} Leslie has also argued that her trial counsel was ineffective for failing to assert the unconstitutionality of this provision at trial. In order to establish ineffective assistance of trial counsel, appellate counsel must demonstrate that trial counsel's performance fell below an objective standard of reasonable representation and also that such failure was prejudicial. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. Prejudice means that but for counsel's failure to object, the result of the proceeding would have been different. Id., at paragraph three of the syllabus. Leslie has failed to cite any authority demonstrating that this statutory provision is unconstitutional, nor is this Court aware of any such authority. In the absence of such authority, *Page 13 
this Court will not conclude that trial counsel was ineffective for failing to raise such a claim at trial.
 {¶ 28} Finding no merit in Leslie's arguments, this Court overrules her assignment of error.
 III {¶ 29} Leslie's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 14 
Costs taxed to Appellant.
 SLABY, J., MOORE, P. J., CONCUR. *Page 1