OPINION
{¶ 1} Randal Todd O'Dell appeals from his conviction and sentence on charges of rape and gross sexual imposition, both involving a child under age thirteen.
 {¶ 2} O'Dell advances ten assignments of error on appeal. First, he contends he received constitutionally ineffective assistance of counsel because his trial attorney *Page 2 
failed to argue that R.C. 2907.02(A)(1)(b), which prohibits sexual conduct with a child under age thirteen, violates his due process rights by imposing strict liability. Second, he claims the trial court erred in failing to dismiss the rape charge against him on the basis that R.C. 2907.02(A)(1)(b) violates his due process rights. Third, he contends his trial counsel provided ineffective assistance by failing to argue that the penalty for violating R.C. 2907.02(A)(1)(b) violates the constitutional prohibition against cruel and unusual punishment. Fourth, he asserts that the trial court erred in not dismissing the rape charge against him on the basis that the penalty for violating R.C. 2907.02(A)(1)(b) constitutes cruel and unusual punishment. Fifth, he argues that his trial counsel provided ineffective assistance by not seeking dismissal of the rape charge on the basis that no cognizable crime was alleged. Sixth, he claims the trial court erred in not dismissing the rape charge on the basis that the indictment failed to allege a necessary mens rea element. Seventh, he contends his trial counsel provided ineffective assistance by failing to renew an objection to the State's introduction of inadmissible other-acts evidence. Eighth, he argues that the trial court erred in admitting the other-acts evidence. Ninth, he contends his trial counsel provided ineffective assistance by not objecting to prosecutorial misconduct. Tenth, he asserts that the trial court erred in not taking some remedial action in the face of prosecutorial misconduct.
 {¶ 3} The present appeal stems from an incident that occurred in October 2007 when twelve-year-old E.D. spent the night at her friend K.B.'s house. O'Dell, a relative of K.B.'s mother and a family friend, also came to the house that evening. At some point, E.D. and O'Dell fell asleep on the same living room couch. K.B. and her mother fell asleep elsewhere in the living room. According to E.D., O'Dell began moving closer to *Page 3 
her as she lay on the couch and pretended to sleep. He then moved his hands under a blanket that was covering her. E.D. testified that O'Dell proceeded to fondle her breasts under her shirt. He then unbuttoned her jeans, placed his hand in her underwear, and inserted his finger inside her vagina. K.B. testified that she awoke and saw O'Dell moving around under the blanket. O'Dell later went downstairs into the basement with K.B. that night. According to K.B., he asked her to have sex with him. E.D. testified that she heard K.B. downstairs telling O'Dell, "No, Randy, no." O'Dell testified in his own defense and denied touching E.D.'s breasts, placing his hand down her pants, inserting a finger in her vagina, or asking K.B. for sex. A jury found him guilty of rape and gross sexual imposition involving a child under age thirteen for his conduct with E.D. The trial court imposed an aggregate sentence of ten years to life in prison. This timely appeal followed.
 {¶ 4} In his first two assignments of error, which are briefed together, O'Dell asserts that R.C. 2907.02(A)(1)(b) violates due process by imposing strict liability, that his trial counsel provided ineffective assistance by not raising the issue, and that the trial court should have dismissed the rape charge on the basis of unconstitutionality.
 {¶ 5} Upon review, we find O'Dell's first two assignments of error to be without merit. In relevant part, R.C. 2907.02(A)(1)(b) provides:
 {¶ 6} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 {¶ 7} "* * *
 {¶ 8} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." *Page 4 
 {¶ 9} O'Dell does not dispute the legislature's ability to impose strict liability with regard to an offender's knowledge of the victim's age under subsection (b). Instead, his argument addresses the "engage in sexual conduct" language of subsection (A)(1). O'Dell acknowledges that the "engage in sexual conduct" element also has been viewed as plainly imposing strict liability. Indeed, this court and others have held that no mens rea is required for engaging in the acts that constitute "sexual conduct" under subsection (A)(1). We addressed this issue in some detail in State v. Craver (April 24, 1989), Montgomery App. No. 11101. In that case, we reasoned:
 {¶ 10} "The specific elimination of knowledge of the victim's age in subsection (A)(1)(b) does not support an inference that the legislature intended knowledge to be read into subsection (A)(1). Indeed, subsection (A)(1) only defines an offense when combined with either subsection (A)(1)(a) or subsection (A)(1)(b). As such, the specific elimination of knowledge of the victim's age better supports an inference, and is to us a plain indication, that the legislature intended that engaging in sexual conduct with a child under thirteen be a strict liability offense.
 {¶ 11} "Except in the unusual circumstances embraced by subsection (A)(1)(a), or where the victim is under thirteen-subsection (A)(1)(b), or where the offender purposely compels the victim to submit by force or threat of force-subsection (A)(2), sexual conduct, without more, is not proscribed conduct. Hence, the legislature would have no reason toconsider a culpable mental state for merely engaging in sexualconduct. (emphasis added). The additional circumstances which make sexual conduct proscribed conduct under subsections (A)(1)(a) and (A)(2)do require a culpable mental state, i.e. `purpose of preventing resistance' and `purposely compel(ling) the (victim) to submit by *Page 5 
force or threat of force,' respectively. However, the additional circumstance which makes sexual conduct proscribed conduct under subsection (A)(1)(b), i.e. the victim is under thirteen, does not
require a culpable mental state. * * * All of this plainly indicates to us that the legislature intended to impose strict liability for engaging in sexual conduct with a child under thirteen."
 {¶ 12} We later reached the same conclusion in State v. Wilson (Aug. 7, 1998), Montgomery App. No. 16728, 16752, opining that "[i]n order to find that sexual conduct occurred, all that is required is proof of the act proscribed." The Tenth District recently has agreed. See State v.Ferguson, Franklin App. No. 07AP-999, 2008-Ohio-6677, ¶ 88 ("Here, considering rape under R.C. 2907.02(A)(1) in its entirety, we note that the statute includes a purposely mens rea in subsection (a) and a knowingly mens rea in subsection (c), but the statute states no mens rea on the sexual conduct element in the main provision. Thus, the statutory construction of R.C. 2907.02(A)(1) plainly indicates that strict liability applies to the sexual conduct element of the statute, which encompasses child rape in subsection (b). Because strict liability applies to the sexual conduct element of rape under R.C. 2907.02(A)(1)(b), the indictment against appellant was not defective for failing to specify a mens rea on that element.").
 {¶ 13} Courts have reached the same conclusion when reviewing other sex-offense statutes. See State v. Vaught, Summit App. No. 22846,2006-Ohio-4727, ¶ 19 ("Appellant admitted that his finger penetrated the victim, which constitutes sexual conduct no matter how slight the penetration might have been. R.C. 2907.01(A). * * * No specific culpable mental state must be shown to prove a violation of R.C. 2907.01(A). Furthermore, the defense of accident, which Appellant attempted to raise, is not an *Page 6 
affirmative defense in Ohio; it serves only to negate the element of intent in crimes where intent must be shown. State v. Poole (1973),33 Ohio St.2d 18, 20. Therefore, it has no applicability in this case.");State v. McGinnis, Van Wert App. No. 15-08-07, 2008-Ohio-5825, ¶ 29
("[I]t is reasonable to presume that because the legislature included the knowledge and reckless requirements regarding the victim's age in R.C. 2907.04, but did not include any degree of culpability as to the sexual conduct, the legislative intent was to impose strict liability for the act of engaging in sexual conduct with a minor.").
 {¶ 14} In response to the foregoing case law, O'Dell insists that imposing strict liability for the act of "engaging in sexual conduct" under R.C. 2907.02(A)(1) violates his due process rights. He notes that "sexual conduct" includes "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A). While denying any sexual activity with E.D., O'Dell contends that, even under the State's theory of the case, he accidentally or unintentionally could have inserted his finger in E.D.'s vagina "as he drunkenly groped the alleged victim." O'Dell also argues that someone accidentally or unintentionally could insert a finger in a small child's anus or vagina while changing a diaper. O'Dell contends criminalizing such unintended acts violates due process. He also cites our ruling inState v. Squires (1996), 108 Ohio App.3d 716, and similar cases for the proposition that even a strict liability offense requires the State to "prove that the accused engaged in some voluntary act * * *." O'Dell then contends R.C. 2907.02(A)(1)(b) creates "a crime with absolutely no requirement of some voluntary act[,]" thereby violating his due process rights. He raises these arguments in the context of an ineffective assistance of counsel claim because he *Page 7 
failed to challenge the statute's constitutionality below.
 {¶ 15} Ineffective assistance of counsel claims are evaluated under the two-prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668. To reverse a conviction based on ineffective assistance of counsel, an appellant first must demonstrate that his counsel's conduct was deficient in that it fell below an objective standard of reasonableness. When considering this issue, trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. Id. at 690. The second prong ofStrickland requires a showing that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the result of the proceeding would have been different. Id. at 687.
 {¶ 16} Upon review, we conclude that O'Dell has failed to overcome the strong presumption that his trial counsel provided objectively reasonable and effective assistance. In reaching this conclusion, we note O'Dell's failure to cite, and our failure to find, any legal authority declaring R.C. 2907.02(A)(1) unconstitutional because it imposes strict liability for engaging in sexual conduct. To the contrary, at least one appellate district expressly has rejected the constitutional argument O'Dell asserts here. See State v. Haywood (June 7, 2001), Cuyahoga App. No. 78276 (rejecting a claim that R.C. 2907.02(A)(1)(b) violates due process because there is no mens rea requirement for engaging in sexual conduct). In the absence of any authority to support a finding that R.C. 2907.02(A)(1) is unconstitutional, we cannot say trial counsel provided unreasonable representation by failing to advance such an argument. Cf. In reR.B., Lorain App. No. 07CA009307, 2008-Ohio-1989, ¶ 27 ("Leslie has failed to cite any authority demonstrating that this statutory provision is unconstitutional, nor is this Court *Page 8 
aware of any such authority. In the absence of such authority, this Court will not conclude that trial counsel was ineffective for failing to raise such a claim at trial.").
 {¶ 17} The cases O'Dell cites on appeal fail to persuade us otherwise. In Squires, supra, we recognized that even strict liability crimes require proof that a defendant engaged in a voluntary act. See R.C. 2901.21(A)(1). In his two appellate briefs, however, O'Dell repeatedly conflates the concepts of a voluntary act and a culpable mental state. They are not the same. A bodily movement is voluntary if it is the product of the actor's volition. R.C. 2901.21(D)(2). We do not interpret R.C. 2907.02(A)(1) as punishing involuntary sexual conduct. Even in the two examples cited by O'Dell, the conduct at issue undoubtedly is voluntary. He criticizes the statute for punishing him for possibly having engaged in accidental sexual conduct by inserting his finger in the victim's vagina "as he drunkenly groped" her. He does not argue, however, that this groping itself was a non-volitional act. Likewise, in the second example involving a person changing a diaper, he does not argue that the actor's arms were moving convulsively or reflexively. Thus, while we agree with O'Dell that R.C. 2907.02(A)(1) cannot punish involuntary conduct, we do not read it as attempting to do so. Instead, the statute simply dispenses with the requirement of a culpable mental state, which is an entirely different issue.
 {¶ 18} O'Dell also quotes Staples v. United States (1994),511 U.S. 600, for the proposition that, even in cases involving strict liability, "the defendant must know that he is engaged in the type of dangerous conduct that is likely to be regulated" and that "a knowledge requirement" has been read into "public welfare crimes."Staples bears no similarity to the present case and certainly would not be expected to alert trial counsel to a potential constitutional argument under R.C. 2907.02(A)(1). Staples addressed *Page 9 
whether a statute criminalizing the possession of an unregistered machinegun required proof that the defendant knew the weapon "had the characteristics that brought it within the statutory definition of a machinegun." Id. at 602. The Supreme Court concluded, as a matter of statutory interpretation, that it included a mens rea requirement. The Court's opinion said nothing about whether the lack of such a requirement would violate due process. In fact, the majority noted that Congress "remains free to amend [the statute] by explicitly eliminating a mens rea requirement." Id. at 615 n. 11. Therefore, Staples does not support O'Dell's claim that his attorney provided ineffective assistance by failing to challenge the constitutionality of R.C. 2907.02(A)(1).
 {¶ 19} Finally, we reject O'Dell's argument that the trial court erred in failing to dismiss the rape charge sua sponte on the basis that R.C. 2907.02(A)(1) is unconstitutional because it lacks a mens rea requirement. As noted above, O'Dell failed to raise this argument below. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
 {¶ 20} We retain the discretion, of course, to consider a waived constitutional argument under a plain-error analysis. In re M.D. (1988),38 Ohio St.3d 149, 151. An error qualifies as "plain error" only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise. State v. Macias, Darke App. No. 1562, 2003-Ohio-1565, citing State v. Yarbrough, 95 Ohio St.3d 227, 245,2002-Ohio-2126.
 {¶ 21} O'Dell has failed to persuade us that R.C. 2907.02(A)(1) is obviously *Page 10 
unconstitutional insofar as it imposes strict liability for engaging in "sexual conduct" under certain circumstances. As noted above, the only case we have found addressing this precise issue has found that R.C. 2907.02(A)(1) does not violate due process by lacking a mens rea requirement. Therefore, we find no plain error in the trial court's failure to dismiss the rape charge sua sponte on the basis that the statute is unconstitutional. O'Dell's first two assignments of error are overruled.
 {¶ 22} In his third and fourth assignments of error, which are briefed together, O'Dell argues that the penalty for violating R.C. 2907.02(A)(1)(b) itself violates the constitutional prohibition against cruel and unusual punishment, that his trial counsel provided ineffective assistance by not raising the issue, and that the trial court should have dismissed the rape charge on the basis of unconstitutionality.
 {¶ 23} Upon review, we find no merit in the foregoing assignments of error. O'Dell's argument is that his sentence of ten years to life in prison for engaging in sexual conduct with a twelve-year-old child in violation of R.C. 2907.02(A)(1)(b) constitutes cruel and unusual punishment. More specifically, O'Dell asserts that it is cruel and unusual punishment to impose a substantial prison sentence for violating what we previously have found to be a strict liability statute.
 {¶ 24} Once again, we conclude that O'Dell's counsel did not provide ineffective assistance by failing to raise the foregoing argument below. In Craver, supra, we held that R.C. 2907.02(A)(1)(b) evidences a legislative intent to impose strict liability for engaging in sexual conduct with a child under age thirteen. In State v. McConnell, Montgomery App. No. 19993, 2004-Ohio-4263, we held that imposing a life sentence for a violation of R.C. 2907.02(A)(1)(b) where the victim is under age ten does not constitute *Page 11 
cruel and unusual punishment. Reading these two opinions together, defense counsel reasonably may have inferred that there was nothing cruel and unusual about O'Dell's sentence of ten years to life for violating R.C. 2907.02(A)(1)(b). O'Dell has failed to overcome the strong presumption that his trial counsel provided objectively reasonable and effective assistance.
 {¶ 25} Nor did the trial court commit plain error by failing to find that O'Dell's sentence constituted cruel and unusual punishment. The third and fourth assignments of error are overruled.
 {¶ 26} In his fifth and sixth assignments of error, which are briefed together, O'Dell argues that his trial counsel provided ineffective assistance by not seeking dismissal of the rape charge on the basis that no cognizable crime was alleged and that the trial court erred in not dismissing the rape charge for this reason. O'Dell's specific argument is that the rape charge is fatally defective because the indictment contains no culpable mental state for engaging in sexual conduct. Relying on State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, he argues that this defect permeated his entire trial, necessitating a reversal of his conviction.
 {¶ 27} Upon review, we find no merit in O'Dell's argument, which presumes that engaging in sexual conduct with a twelve-year-old child is not a strict liability offense. In our analysis of his first two assignments of error, however, we concluded that a violation of R.C. 2907.02(A)(1)(b) is a strict liability offense. Because the State was not required to prove a culpable mental state in connection with any element of the offense, the omission of a culpable mental state from the indictment was not error. Therefore, defense counsel did not provide ineffective assistance by failing to raise the issue, and *Page 12 
the trial court did not commit plain error by failing to dismiss count one. The fifth and sixth assignments of error are overruled.
 {¶ 28} In his seventh and eighth assignments of error, which are briefed together, O'Dell asserts that his trial counsel provided ineffective assistance by failing to renew an objection to the State's introduction of inadmissible other-acts evidence and that the trial court erred in admitting the evidence. These assignments of error concern testimony about O'Dell's solicitation of sex downstairs with K.B. after he inserted his finger inside E.D.'s vagina on the couch.
 {¶ 29} On direct examination, E.D. testified, over defense counsel's objection, that she heard K.B. downstairs saying, "No, Randy, no." (Trial transcript at 37). On cross examination, defense counsel himself produced a copy of a statement E.D. had given to police after the events in question. The following exchange occurred between E.D. and defense counsel:
 {¶ 30} "Q: "Okay. Now on the second page of that statement, you say that when Randy went downstairs with [K.B.], Randy was trying to finger [K.B.] but [K.B.] was pulling away. Now, I want you to look on the second page of that statement to see if you see that. Do you see it?"
 {¶ 31} A: "Yes."
 {¶ 32} Q: "Okay. How did you know that?"
 {¶ 33} A: "I could hear and [K.B.] told me."
 {¶ 34} Q: "You heard something and what else?"
 {¶ 35} A: "[K.B.] told me."
 {¶ 36} Q: "[K.B.] told you?" *Page 13 
 {¶ 37} A: "Yes."
 {¶ 38} (Id. at 51-52).
 {¶ 39} Later in the trial, the State called K.B. as a witness. The prosecutor asked her what O'Dell had said to her in the basement. K.B. responded that "he had asked me to have sex with him * * *." (Id. at 132). K.B. testified that she refused and went back upstairs after O'Dell made the request a second time. (Id. at 133). The prosecutor subsequently asked K.B. whether she had told E.D. about O'Dell requesting sex. K.B. responded that she had told E.D. (Id. at 134). Defense counsel did not object to any of this questioning. On cross examination by defense counsel, K.B. denied that O'Dell had tried to "finger" her downstairs in the basement. She also denied telling E.D. that O'Dell had tried to finger her. (Id. at 147-149). In his closing argument, defense counsel stressed the discrepancy in the testimony of E.D. and K.B. about whether K.B. said O'Dell had tried to finger her. (189, 193-194). The prosecutor argued on rebuttal that E.D., in her mind, had equated or confused "fingering" and sex. (Id. at 198).
 {¶ 40} On appeal, O'Dell contends defense counsel provided ineffective assistance by not objecting to K.B.'s testimony that he asked her for sex in the basement. O'Dell argues that K.B.'s testimony was inadmissible under Evid. R. 404(B) and R.C. 2945.59. These provisions prohibit evidence of other acts of a person when offered to prove his character to show that he acted in conformity therewith. Both Evid. R. 404(B) and R.C. 2945.59 allow other-acts evidence to be admitted, however, if it tends to show one of the other things enumerated in the rule or statute. State v. Smith (1992), 84 Ohio App.3d 647, 664.
 {¶ 41} We are not persuaded that K.B.'s testimony about O'Dell asking her for *Page 14 
sex was admissible under Evid. R. 404(B) or R.C. 2945.59. The State contends the testimony was admissible to show O'Dell's purpose or intent in groping and digitally penetrating E.D. Although we determined, supra, that the rape charge was a strict-liability offense, the State notes that the gross sexual imposition charge required proof that O'Dell touched E.D. for the purpose of sexual arousal or gratification. The State suggests that O'Dell's solicitation of K.B. for sex immediately after he assaulted E.D. is evidence of his purpose. In our view, however, criminal purpose was not genuinely at issue. O'Dell testified on his own behalf, and his defense was not that he accidentally touched E.D. or lacked the requisite intent. Instead, his defense was that E.D. was lying and that he did not touch her. Under these circumstances, O'Dell's purpose and intent were not truly at issue. State v.Pierson (1998), 128 Ohio App.3d 255, 260; Smith, 84 Ohio App.3d at 664.
 {¶ 42} The State also suggests that K.B.'s testimony was admissible as proof of O'Dell's plan, scheme, or system. Evidence is admissible for this purpose when it "forms the immediate background of the offense alleged and it would be difficult to prove that the accused committed the crime alleged without also introducing evidence of other acts."Smith, 84 Ohio App.3d at 667. The other-acts evidence should be so blended with the charged criminal conduct that proof of one incidentally involves, explains, or tends to prove the other. Id. "Absent that nexus, the other criminal act, whether like or unlike the one charged or similar or dissimilar to it, cannot be used to prove the scheme, plan, or system employed by the accused to commit the offense for which he or she is on trial." Id. In the present case, it would not be difficult for the State to segregate O'Dell's sexual conduct with E.D. from his act of soliciting K.B. for sex. Although the two incidents *Page 15 
occurred close in time, they are not inextricably related. Nor does one involve, explain, or prove the other. According to the State, O'Dell engaged in sexual activity with E.D. while she appeared to be asleep. He then went downstairs and asked K.B. for sex. We see no nexus between the two events such that they might be considered part of a common plan, scheme, or system.
 {¶ 43} Despite the foregoing conclusion, we find no reversible error for at least two reasons. First, we note that defense counsel at least arguably opened the door to K.B.'s testimony about what was said in the basement through his cross examination of E.D. On direct examination, the prosecutor merely elicited from E.D. that she had heard K.B. downstairs saying, "No, Randy, no." On cross examination, defense counsel himself then asked E.D. about K.B. claiming O'Dell had tried to "finger" her. The jury had heard no testimony about this until defense counsel elicited it. After defense counsel asked E.D. on cross examination whether K.B. had said O'Dell tried to finger her, the parties and the trial court reasonably may have concluded that the door was open for the State to ask K.B. herself what had happened in the basement and what she had told E.D. This may be why defense counsel did not object when K.B. testified about O'Dell asking her for sex downstairs.[1]
 {¶ 44} Second, in his closing argument, defense counsel stressed the discrepancy in the testimony of E.D. and K.B. about whether K.B. had claimed O'Dell tried to finger her. Counsel did so in an effort to undermine E.D.'s credibility. Therefore, *Page 16 
it appears that he may have allowed K.B.'s testimony to be admitted without objection so he could point out the inconsistency to the jury. Even if this course of action by defense counsel was unwise, debatable trial tactics do not constitute ineffective assistance of counsel.State v. Hess, Montgomery App. No. 21646, 2007-Ohio-4099, ¶ 62.
 {¶ 45} Finally, even if defense counsel provided deficient representation by not objecting to K.B.'s testimony, we find no reasonable probability that O'Dell would have been acquitted absent the testimony. In reaching this conclusion, we note that E.D.'s allegations were corroborated insofar as K.B. testified that she awoke and observed O'Dell moving around under the blanket covering E.D. In addition, E.D.'s allegations were corroborated by the testimony of W.D., her mother. W.D. testified that E.D. acted "distraught" and "withdrawn" immediately upon returning home from K.B.'s house. W.D. also testified that she noticed her daughter's bloody sanitary napkins after she returned home. W.D. thought it was unusual because it was not time for E.D.'s menstrual period. (Trial transcript at 87-89). This corroborates E.D.'s own testimony that O'Dell's act of inserting his finger inside her vagina caused her to bleed. (Id. at 57). Because we find no reasonable probability that O'Dell would have been acquitted absent K.B.'s testimony about him asking her for sex, the prejudice required for ineffective assistance of counsel has not been shown. State v.Scott, Montgomery App. No. 22430, 2008-Ohio-6735, ¶ 32 ("To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different."). Based on the reasoning set forth above, we also find no plain error in the trial court's *Page 17 
failure to exclude K.B.'s testimony. The seventh and eighth assignments of error are overruled.
 {¶ 46} In his ninth and tenth assignments of error, which are briefed together, O'Dell argues that his trial counsel provided ineffective assistance by not objecting to prosecutorial misconduct and that the trial court erred in not declaring a m istrial or taking some remedial action in response to the misconduct.
 {¶ 47} The alleged misconduct occurred during the rebuttal portion of the prosecutor's closing argument. First, O'Dell contends the prosecutor improperly engaged in histrionic behavior by crying in front of the jury. Second, he claims the prosecutor improperly argued that he was a lawless person bent on doing whatever he wanted. Third, he contends the prosecutor improperly referred to K.B.'s allegation that he asked her for sex downstairs. O'Dell asserts that these instances of misconduct denied him a fair trial.
 {¶ 48} Upon review, we are unpersuaded by O'Dell's arguments. To prevail on his prosecutorial misconduct claim, O'Dell must show that the prosecutor's conduct was improper and that it prejudiced his substantial rights. State v. Kelly, Greene App. No. 2004-CA-20, 2005-Ohio-305, ¶ 18. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Cornwell, 86 Ohio St.3d 560,570-571, 1999-Ohio-125, quoting Smith v. Phillips (1982), 455 U.S. 209.
 {¶ 49} To support his claim that the prosecutor cried during her rebuttal argument, O'Dell has provided us with an affidavit from his trial counsel. In an October 2, 2008, decision and entry, however, we struck the affidavit from the record. Based on our review of a videotape, we also noted our inability to detect "any misconduct on the *Page 18 
part of the prosecutor as it relates to her crying before the jury." Thus, the record contains no evidence to substantiate a claim that the prosecutor engaged in misconduct by crying in front of the jury.
 {¶ 50} O'Dell's second argument concerns the following statement by the prosecutor: "This defendant thinks he can do whatever he wants and get away with it. No rules, no boundaries, no minor is off limits. And he's asking you to tell him that that's okay. Don't be fooled by that. Don't be fooled by a wolf in sheep's clothing." Taken literally, this statement is inaccurate insofar as the prosecutor opined that O'Dell was asking the jury to tell him it is okay to do whatever he wants with a minor. O'Dell testified at trial and denied engaging in any sexual conduct with E.D. Therefore, he was not asking the jury to condone sexual activity with a twelve-year-old child. He was asking the jury to find that no such activity took place. Counsel generally is given wide latitude in closing arguments, however, and viewing the prosecutor's remark in the context of her entire closing, we do not believe that it rose to the level of impermissible misconduct.
 {¶ 51} Finally, O'Dell takes issue with the portion of the statement where the prosecutor told the jury "no minor is off limits." He contends this is an improper reference to K.B.'s testimony that he solicited her for sex downstairs after he engaged in sexual conduct on the couch with E.D. As an initial matter, however, it is unclear what was meant by the ambiguous reference to "no minor" being "off limits." The prosecutor just as well may have meant that O'Dell did not consider the twelve-year-old victim, E.D., to be "off limits." This portion of the closing argument does not mention K.B. by name, and it is not clear to us that the prosecutor was making an oblique reference to her. Even if the remark was intended as a reference to O'Dell's act of soliciting sex from K.B., the *Page 19 
jury already had heard evidence about this occurring. We addressed the propriety of this evidence being admitted in our analysis of the seventh and eighth assignments of error. Because the evidence had been admitted, however, we cannot say O'Dell's trial counsel provided ineffective assistance by failing to object during closing argument, even assuming, arguendo, that the prosecutor's remark was intended as a reference to K.B. The prosecutor's reference to evidence that the trial court previously had admitted cannot constitute misconduct. Because we have found no prosecutorial misconduct, defense counsel did not provide ineffective assistance by failing to raise the issue, and the trial court did not commit plain error by failing to take any remedial action. The ninth and tenth assignments of error are overruled.
 {¶ 52} Based on the reasoning set forth above, we affirm the judgment of the Montgomery County Common Pleas Court.
GRADY, J., concurs.
FAIN, J., concurs in judgment.
[1] To the extent an argument might be made that defense counsel provided ineffective assistance if he "opened the door" to K.B.'s testimony about O'Dell asking her for sex, we note that O'Dell advances no such argument. Instead, his assignment of error is simply that defense counsel provided ineffective assistance by not objecting to K.B.'s testimony.