[Cite as *State v. Dietrich*, 2011-Ohio-4347.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  1-10-76

    v.

BRAD DIETRICH,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2010 0063

Judgment Affirmed in Part, Reversed in Part

Date of Decision:  August 29, 2011

APPEARANCES:

    *Jason N. Flower*  for Appellant

    *Alissa M. Sterling*  for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Brad Dietrich, appeals from the judgment of the Court of Common Pleas of Allen County sentencing him to a ten-year prison term. On appeal, Dietrich contends that he received ineffective assistance of counsel, and that his pleas of guilty were involuntary. Based on the following, we affirm in part and reverse in part the judgment of the trial court.

{¶2} In September 2009, the Allen County Grand Jury indicted Dietrich on Count One: aggravated trafficking of a controlled substance, methamphetamine, in violation of R.C. 2925.03(A)(1), (C)(1)(a), a felony of the fourth degree; Count Two: aggravated trafficking of a controlled substance, methamphetamine, in violation of R.C. 2925.03(A)(1), (C)(1)(a), a felony of the fourth degree; Count Three: aggravated trafficking of a controlled substance, methamphetamine, in violation of R.C. 2925.03(A)(1), (C)(1)(a), a felony of the fourth degree; Count Four: aggravated trafficking of a controlled substance, methamphetamine, in violation of R.C. 2925.03(A)(1), (C)(1)(a), a felony of the fourth degree; Count Five: aggravated possession of a controlled substance, methamphetamine, in violation of R.C. 2925.11(A), (C)(1)(a), a felony of the fifth degree; Count Six: illegal assembly or possession of chemicals for the manufacture of a controlled substance, methamphetamine, in violation of R.C. 2925.041(A),(C), a felony of the third degree; Count Seven: conspiracy to manufacture methamphetamine in

violation of R.C. 2925.04(A), (C)(3)(a) and R.C. 2923.01(A)(1), a felony of the second degree; and, Count Eight: engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the first degree. The indictment arose following an investigation wherein law enforcement discovered that Dietrich was purchasing pseudoephedrine for the production of methamphetamine.

{¶3} On February 23, 2010, Dietrich was arraigned. Dietrich, being indigent, requested court-appointed counsel. F. Stephen Chamberlain ("attorney Chamberlain") was appointed as counsel for Dietrich. Thereafter, Dietrich entered a plea of not guilty to all counts in the indictment.

{¶4} On April 7, 2010, Dietrich filed two motions to suppress. One motion sought suppression of Dietrich's statements to law enforcement. The other motion sought suppression of evidence gathered via the use of a GPS tracking device placed on Dietrich's vehicle by law enforcement.

{¶5} On June 10, 2010, a hearing was held on both motions to suppress. During the hearing attorney Chamberlain addressed the trial court, stating, in pertinent part:

> **At this point in time, after discussing the matter with my client and doing a little more research after some other (sic) additional discovery was made by the State of Ohio. There are two motions that are pending; one is a motion to suppress statements; the other is a motion to suppress G-P-S tracking evidence. At this**

> **point in time, those motions in my opinion, are deemed not necessary based upon the status of the law and the uh, evidence that I know would be presented at any sort of hearing. So at this point in time, we're gonna be withdrawing those two motions. I'll put something on more formal, but we do need (sic) do it on record, I've advised my client of the same and the reasons why we're doing it. And just to advise the Court, we're still in uh, we're discussing and there's has been a proposed uh, settlement made by the State of Ohio that I've communicated with my client. We're still discussing that matter \* \* \*.**

June 10, 2010, Motion to Suppress Hearing Tr., p. 2. The trial court asked Dietrich if attorney Chamberlain spoke with him about withdrawing the motions to suppress and whether he consented to the withdrawal, to which Dietrich responded in the affirmative. Id. at pp. 2-3. Accordingly, the motions to suppress were withdrawn.

{¶6} On June 21, 2010, the matter proceeded to the final pre-trial hearing. As a preliminary matter attorney Chamberlain notified the trial court that Dietrich desired other counsel, resulting in the following colloquy:

> **Mr. Chamberlain: \* \* \* I met with my client last night regarding the matter for today and coming up for trial next week. And then just talked to him very briefly this morning after I spoke with Miss Sterling regarding the case just to confirm where we were at negotiation-wise. Negotiations are still where they were; the offer is still the offer that's been made.[1] My client has told me a couple of times he's rejecting**

---

[1] Although there is no plea offer sheet in the record memorializing the aforementioned plea offer ("original plea offer"), a fact Dietrich concedes, we find that there is sufficient evidence in the record to demonstrate that the original plea offer existed. The record, however, only reveals that the original plea offer was set to expire on July 30, 2010. Final Pre-trial Hearing Tr., pp. 13-14. There is nothing in the record that reveals the original plea offer's sentencing recommendations.

that, and I just advise him again that the offer has not been modified by the State of Ohio this morning. First thing that he advised me is that he wants another attorney. So at this point we're here to put that on the record. I'm not withdrawing as counsel, however, I believe that that's - - it's a matter that needs to be heard and placed on the record for purposes of keeping the record uh, complete.

The Court: Okay, very well. The Court, in order to make a record of the issue then, is that correct, Mr. Dietrich?

Mr. Dietrich: Yes, your Honor

The Court: What seems to be the problem?

Mr. Dietrich: He don't come and see - - he didn't come and see me all this time; that all these times I've requested him to come up and see me, that he should have had an expert hired already. I just don't trust him. He's not - - I don't feel he's doing what his job (sic) in the interest of my best interest. * * *

* * *

Mr. Chamberlain: * * * He's basically not happy with the fact that I can't get him a better offer. And he thinks that if uh, either another attorney or if there was a hired attorney, would somehow then be able to persuade the State of Ohio to give him a better offer in terms of years than what Miss Sterling has put on the table.

Mr. Dietrich: I never said that they would get me a better offer.

Mr. Chamberlain: I've advised Miss Sterling that - - or advised him that Miss Sterling, that absent bribery or physical force, I'm not going to get Miss Sterling to come to change her mind on this offer, and I'm not going to do either one of those. So he understands that position * * * And I have advised him basically that's where - - that's where the negotiations stand and he has - - there are limited choices at this point. which (sic) is, he either

> **accepts an offer that's been offered, or we prepare the matter and go to trial. \* \* \***
>
> **The Court:  Okay.  Mr. Dietrich, just so we make a record, anything else you want to say?**
>
> **Mr. Dietrich:  I'm not real sure.  I just - - I don't feel I trust him, and this is my life in his hands.**

Final Pre-trial Hearing Tr., pp. 2-5.  Upon considering attorney Chamberlain's and Dietrich's testimony, the trial court denied Dietrich's motion to withdraw attorney Chamberlain as counsel.  The trial court, however, informed Dietrich that he had the right to hire an attorney.  Final Pre-trial Hearing Tr., p. 7.  Also during the hearing, there was discussion of the original plea offer, resulting in the following colloquy:

> **Mr. Chamberlain: \* \* \* [J]ust to indicate that I've advised my client of [the original plea offer], obviously beforehand, and now he's heard it in open court, so he knows what the - - what the final date for any offer.  And I guess just so it's clear on the record for my client's benefit, that Miss Sterling is completely not really serious that if there is no uh, up-taking by our side of this offer, that it is off the table and there is nothing uh, being presented other than to go to trial on the indictment.  \* \* \***
>
> **The Court:  Well, to make it even clearer, for the record, Mr. Dietrich, do you understand that, right?**
>
> **Mr. Dietrich:  Yes, your Honor.**

Id. at p. 14.

{¶7} On July 19, 2010, Robert Blackwell ("attorney Blackwell") filed a notice of substitution of counsel with the trial court. In his notice, attorney Blackwell notified the trial court that he would be representing Dietrich in place of attorney Chamberlain.

{¶8} On August 17, 2010, Dietrich filed a motion to suppress any and all information obtained by law enforcement from pharmacies arguing that release of such information was prohibited under HIPPA. On August 23, 2010, Dietrich filed a motion to suppress his statements to law enforcement. On that same day, a hearing was held on Dietrich's first motion to suppress. The following day the trial court filed a judgment entry denying Dietrich's first motion to suppress. On September 2, 2010, Dietrich filed a motion to suppress evidence gathered via the use of a GPS tracking device placed on Dietrich's vehicle by law enforcement. On that same day, a hearing was held on Dietrich's second motion to suppress. On September 6, 2010, the trial court filed a judgment entry denying Dietrich's second motion to suppress.

{¶9} On September 7, 2010, the matter proceeded to a change of plea hearing. Prior to entering pleas of guilty the trial court conducted a thorough Crim.R. 11 colloquy. See Change of Plea Hearing Tr., pp. 3-18. Thereafter, pursuant to the plea agreement ("amended plea offer"), Dietrich withdrew his pleas of not guilty and entered pleas of guilty to Counts One, Two, Three, Six, and

Eight of the indictment, and signed a written plea of guilty. Based on Dietrich's responses during the Crim.R. 11 colloquy, the trial court found that Dietrich knowingly and voluntarily plead guilty to the foregoing counts. Upon the State's motion, the trial court dismissed Counts Four, Five, and Seven of the indictment.

{¶10} On October 12, 2010, Dietrich filed a letter with the trial court notifying it that he terminated his relationship with attorney Blackwell, and requested re-appointment of attorney Chamberlain. On October 18, 2010, the matter proceeded to an appointment of counsel hearing, during which Dietrich's letter was entered as an exhibit, and the trial court again appointed attorney Chamberlain to represent Dietrich.

{¶11} On October 25, 2010, the matter proceeded to sentencing. The trial court sentenced Dietrich to a one-year prison term on Count One, a one-year prison term on Count Two, a one-year prison term on Count Three, a five-year prison term on Count Six, and a five-year prison term on Count Eight. The trial court further ordered that Count One, Count Two, and Count Three be served concurrently to each other and concurrently to the prison term imposed in Count Eight, and that the prison terms imposed on Counts One, Two, Three, and Eight be served consecutively to the prison term imposed on Count Six, resulting in a total prison term of ten years. The trial court further ordered Dietrich to pay a mandatory fine of $5,000.00 on Count Six, which may be waived upon the proper

filing of an affidavit of indigency, and "pay $1,000.00 as restitution to the West Central Ohio Crime Task Force – all payments to be made through the Clerk of Courts Office."  October 26, 2010 Judgment Entry, p. 4.

**{¶12}** It is from this judgment Dietrich appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**APPELLANT'S TRIAL COUNSEL DID NOT ADEQUATELY ADVISE OR REPRESENT APPELLANT TO APPELLANT'S DETRIMENT.**

*Assignment of Error No. II*

**APPELLANT'S PLEA WAS AN INVOLUNTARY PLEA.**

*Assignment of Error No. I*

**{¶13}** In his first assignment of error, Dietrich contends that attorney Blackwell did not adequately advise or represent him.  Specifically, Dietrich contends that attorney Blackwell did not adequately investigate the case, unreasonably changed trial strategy from cooperative to adversarial, did not understand the legal arguments put forth in the motions to suppress, did not brief an issue of first impression, and, as a result, he (Dietrich) received a less desirable plea offer.  We disagree.

**{¶14}** This Court has previously held in *State v. Streets*, 3d Dist. No. 5-98-09, 1998 WL 682284, *2:

> **A plea of guilty waives a claim of ineffective assistance of counsel, except to the extent the defects complained of caused the plea to be less than knowing and voluntary.** *State v. Barnett* **(1991), 73 Ohio App.3d 244, 249, 596 N.E.2d 1101. If a defendant can demonstrate that he [or she] received ineffective assistance of counsel in entering his [or her] guilty plea and that but for that ineffective assistance he [or she] would have proceeded to trial, then we would be required to reverse a defendant's sentence and remand the matter to the trial court to allow the defendant to withdraw his [or her] plea.** *State v. Freeman* **(July 3, 1997), Shelby App. Nos. 17-96-18 and 17-96-19, unreported, citing** *Hill v. Lockhart* **(1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel.** *State v. Smith* **(1985), 17 Ohio St.3d 98, 477 N.E.2d 1128.**

See also, *State v. Jackson*, 3d Dist. No. 1-98-78, 1999 WL 253236; *State v. Kitzler*, 3d Dist. No. 16-02-06, 2002-Ohio-5253, ¶¶12-13, *State v. Cook*, 3d Dist. No. 14-10-05, 2010-Ohio-4814, ¶18. The contentions lodged in Dietrich's first assignment of error address attorney Blackwell's failure to investigate Dietrich's case, his unreasonable trial strategy, his misunderstanding of the applicable law, and his failure to brief issues. While Dietrich does contend that the cumulative effect of attorney Blackwell's foregoing failures resulted in a less-than-desirable plea bargain, at no point, throughout his first assignment of error, does Dietrich contend that these failures affected his ability to enter a knowing, intelligent, and voluntary plea. Consequently, these contentions, even if meritorious, are outside our scope of review.

{¶15} Accordingly, we overrule Dietrich's first assignment of error.

*Assignment of Error No. II*

{¶16} In his second assignment of error, Dietrich contends that his plea was involuntary. Specifically, Dietrich argues that his plea was involuntary as a result of attorney Blackwell's erroneous representations about receiving a better outcome than that offered in the original plea deal, and allowing the initial plea deal to expire. Had it not been for attorney Blackwell's erroneous representations, and failure to encourage acceptance of the original plea deal, Dietrich contends that he would have not been in a situation where he had to accept the amended plea deal. As a result of this situation, Dietrich contends that his plea was involuntary. We disagree.

{¶17} Prior to accepting a plea of guilty or no contest the trial court must personally address the defendant and determine that the plea is being made voluntarily, knowingly, and intelligently. Crim.R. 11.

{¶18} In *State v. Langenkamp*, 3d Dist. No. 17-08-03, 17-08-04, 2008-Ohio-5308, this Court dealt with an issue similar to that raised in the present case. In *Langenkamp*, appellant argued that he entered his plea of no contest because his attorney had assured him that the plea agreement provided for concurrent sentencing. Appellant subsequently discovered that there was no agreement for concurrent sentencing when the trial court ordered his sentences to be served

consecutively.[2] Consequently, appellant filed a motion to withdraw his plea of no contest, which the trial court denied. On appeal, the appellant maintained that his counsel's erroneous representations concerning sentencing induced his plea of no contest, rendering it involuntary. Considering the record and applicable law this Court affirmed the trial court's judgment overruling appellant's motion to withdraw his no contest plea. In doing so, this Court conducted an extensive review of case law addressing the differences between defense counsel's erroneous speculation and defense counsel's erroneous representations of a promised sentence, and the effect thereof on the knowing, intelligent, and voluntary nature of defendant's plea. *Langenkamp*, 2008-Ohio-5308, ¶¶24-26. After conducting its review of the applicable case law, this Court stated:

> **[T]hat in order for a defendant to establish a manifest injustice sufficient for a post-sentence withdrawal of a guilty or no contest plea, a defendant must establish that: (1) defense counsel mistakenly represented what has been promised by way of a sentence; (2) the erroneous representation played a substantial part in his/her decision to plead guilty or no contest; and (3) he/she was reasonably justified in relying upon counsel's erroneous representation.**

Id. at ¶27. We remain cognizant of the fact that the present case does not involve a post-sentence motion to withdraw a plea of guilty or no contest. Nevertheless, we find the foregoing analysis useful in determining whether defense counsel's

---

[2] The trial court in *Langenkamp* found, and this Court agreed, that there was never an agreement for concurrent sentencing, *Langenkamp*, 2008-Ohio-5308, at ¶17, but concluded that Langenkamp was not reasonably justified in relying on counsel's erroneous representations. Id. at ¶28.

-12-

alleged erroneous representations induced appellant to enter his plea of guilty, resulting in an unknowing, unintelligent, and involuntary plea.

{¶19} In order to satisfy the first prong of the *Langenkamp* analysis it must be apparent from the record that an erroneous representation did in fact occur. See *State v. Radel*, 5th Dist. No. 2009-CA-00021, 2009-Ohio-3543, citing *State v. Cooperrider* (1983), 4 Ohio St.3d 226. Furthermore, defendant bears the burden to identify those portions of the record demonstrating the existence of counsel's erroneous representations. In *Langenkamp*, this Court, citing the record, found that appellant's defense counsel, via defense counsel's testimony and testimony of appellant's psychologist, had in fact guaranteed appellant that he was going to be sentenced concurrently if he plead no contest. *Langenkamp*, 2008-Ohio-5308, at ¶¶19-23. Consequently, this Court presumed that the first and second prongs were satisfied, and determined the merits of appellant's appeal based on the third prong.

{¶20} In addressing the first prong of the analysis, we, like the *Langenkamp* court, review the record to determine whether attorney Blackwell made erroneous representations to Dietrich concerning his ability to secure a more favorable outcome in the case. Unlike *Langenkamp*, the only evidence of attorney Blackwell's alleged erroneous representations appear in Dietrich's October 12, 2010 letter and Dietrich's statements during the sentencing hearing. However, this Court has previously held that defendant's own self-serving testimony (i.e., self-

serving affidavits, which do not exist here, or statements) alone are insufficient to establish manifest injustice. *State v. Young*, 3d Dist. Nos. 13-08-21, 13-08-22, 13-08-23, 2008-Ohio-6072, ¶26, citing *State v. Rockwell,* 5th Dist. No. 2008-CA-00009, 2008-Ohio-2162, ¶42, citing *State v. Brown,* 167 Ohio App.3d 239, 2006-Ohio-3266, ¶13. Consequently, the statements contained in Dietrich's letter and testimony, without more, are insufficient to demonstrate the existence of attorney Blackwell's alleged erroneous representations. See *Langenkamp*, 2008-Ohio-5308, at ¶¶19-23. Accordingly, Dietrich has failed to satisfy the first prong, rendering his second assignment of error meritless.

**{¶21}** Nevertheless, Dietrich invites us to infer the existence of attorney Blackwell's erroneous representations by considering the change in Dietrich's defense strategy, from cooperative to adversarial, which occurred after attorney Blackwell was hired. We decline to draw such inferences.

**{¶22}** Upon review of the record, it appears that Dietrich, prior to attorney Blackwell's appearance as counsel of record, decided to defend against the charges, rather than admit to them via a guilty plea. This strategic shift is evident during the final pre-trial hearing. At that point in time the original plea offer was in existence. Attorney Chamberlain explained that he had discussed the original plea offer with Dietrich, the improbability of receiving a better offer, and notified Dietrich of the original plea offer's deadline. Final Pre-trial Hearing Tr., pp. 2, 4,

14. Nevertheless, Dietrich, according to attorney Chamberlain, repeatedly rejected the offer, and sought appointment of new counsel, which Dietrich confirmed during the hearing. Id. at p. 2. On the face of the record Dietrich, prior to attorney Blackwell's involvement, had decided that he was not going to accept the original plea offer, which consequently placed him in a situation where he could either accept the amended plea offer or go to trial. Although there may have been discussions between attorney Blackwell and Dietrich concerning this decision, they are not in the record, and we will not infer their existence at this juncture. Accordingly, the record reveals that Dietrich, not attorney Blackwell, was responsible for the predicament which he now claims resulted in an involuntary plea.

{¶23} Furthermore, the record demonstrates that Dietrich knowingly, intelligently, and voluntarily entered his pleas of guilty. Prior to accepting Dietrich's pleas of guilty the trial court conducted a thorough Crim.R. 11 colloquy. See Change of Plea Hearing Tr., pp. 3-18. "The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty." *State v. Ballard* (1981), 66 Ohio St.2d 473, 479-80. Crim.R. 11(C) creates a record by which an appellate court can determine if the pleas were entered voluntarily. *State v. Griggs,* 103 Ohio St.3d 85, 2004-

Ohio-4415, ¶11. However, Crim.R. 11(C)'s ultimate purpose "is to insure that there was a voluntary, knowing, and intelligent waiver of the constitutional rights abandoned by a plea of guilty, and of the nature and extent of the punishment involved by such a plea." *State v. Branham*, 3d Dist. No. 11-86-3, 1987 WL 15004. As such, a trial court's adherence to Crim.R. 11(C), absent any indicia of coercion, creates a presumption that the defendant's plea was entered knowingly, voluntarily, and intelligently. *State v. Ogletree,* 2nd Dist. No. 21995, 2008-Ohio-772, ¶7, citing *State v. Ferbrache,* 6th Dist. No. WD-06-042, 2007-Ohio-746.

{¶24} According to Dietrich's responses during the Crim.R. 11 colloquy, he understood the charges in the indictment, including the offenses to which he would plead guilty, and the potential sentence that the trial court could impose. The record further shows that Dietrich was twenty-seven years old at the time of his plea; he was not under the influence of drugs or alcohol; he understood the terms of the plea agreement, which were also set forth in a written plea agreement that he signed; and, he was not coerced into entering the plea. Moreover, Dietrich did not voice any concerns or complaints about attorney Blackwell's advice and representations, the expiration of the original plea offer, or the amended plea offer. Having considered the colloquy in its entirety, we find that Dietrich knowingly, intelligently, and voluntarily entered his pleas of guilty.

{¶25} Additionally, we find that Dietrich's predicament between accepting the amended plea offer or going to trial did not render his plea involuntary. The nature of a plea deal involves the inescapable conflict between accepting the deal or going to trial. The mere fact that a defendant choses to accept the plea deal to avoid the inconvenience of trial and the possibility of receiving a longer sentence does not render the defendant's decision involuntary. See *State v. Richter*, 8th Dist. Nos. 46122, 46123, 1983 WL 4787, citing *State v. Piacella* (1971), 27 Ohio St.2d 92, and *State v. Stone* (1975), 43 Ohio St.2d 163. Consequently, we find Dietrich's acceptance of the amended plea offer and his resulting pleas of guilty were not involuntary but were calculated decisions.

{¶26} For the foregoing reasons, we find that Dietrich knowingly, intelligently, and voluntarily entered his pleas of guilty.

{¶27} Accordingly, we overrule Dietrich's second assignment of error.

{¶28} In addition to Dietrich's assignments of error, we, sua sponte, address plain error in Dietrich's sentencing, particularly the trial court's award of restitution to the West Central Ohio Crime Task Force. In order to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to

-17-

prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 1997-Ohio-204; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825.

**{¶29}** As it stands now, Dietrich has been ordered to "pay $1,000.00 as restitution to the West Central Ohio Crime Task Force – all payments to be made through the Clerk of Courts Office." October 26, 2010 Judgment Entry, p. 4. This is plain error.

**{¶30}** R.C. 2929.18 governs a trial court's ability to award restitution. The statute provides, in pertinent part:

> **\* \* \* Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:**
>
> **(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. \* \* \***

R.C. 2929.18(A)(1).

**{¶31}** This Court has held that the plain language of R.C. 2929.18(A)(1) makes restitution available only to actual victims of an offense. *State v. Stewart*, 3d Dist. No. 16-08-11, 2008-Ohio-5823, ¶9, citing *State v. Toler,* 174 Ohio App.3d 335, 338, 2007-Ohio-6967; *State v. Christy,* 3d Dist. No. 16-04-04, 2004-Ohio-6963, ¶16. "A victim of a crime is defined as the person or entity that was

the 'object' of the crime." *State v. Samuels,* 4th Dist. No. 03CA8, 2003-Ohio-6106, ¶5, citing Black's Law Dictionary (5th Ed.1979) 1405. In certain circumstances, a government entity may be considered a victim of a crime under R.C. 2929.18(A)(1): For example, when government funds are embezzled or when government property is vandalized. Id. However, a government entity voluntarily advancing its own funds to pursue a drug buy through an informant is not one of the scenarios contemplated by R.C. 2929.18(A)(1). See *State v. Pietrangelo,* 11th Dist. No. 2003-L-125, 2005-Ohio-1686, ¶¶12-15; *State v. Justice*, 5th Dist. No. 09-CA-66, 2010-Ohio-4781, ¶¶24, 30; *State v. Jones*, 7th Dist. Nos. 08 JE 20, 08 JE 29, 2010-Ohio-2704, ¶44; *State v. Collins*, 6th Dist. Nos. H-09-001, H-09-005, 2009-Ohio-6346, ¶52, *State v. Frazier*, 4th Dist. No. 10CA15, 2011-Ohio-1137, ¶18.

**{¶32}** In light of this plain error, we hereby vacate the restitution order.

**{¶33}** Having found no error prejudicial to Dietrich herein, in the particulars assigned and argued, but having found plain error in the trial court's award of restitution to the West Central Ohio Crime Task Force, we affirm in part, and reverse in part, the judgment of the trial court.

***Judgment Affirmed in Part,***
***Reversed in Part***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**