[Cite as *State v. Banks*, 2013-Ohio-649.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO. 13-12-18

    v.

GEOFFREY M. BANKS,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11-CR-0234

Judgment Affirmed in Part and Reversed in Part

Date of Decision:   February 25, 2013

APPEARANCES:

    *Kent D. Nord* for Appellant

    *Derek W. DeVine* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Geoffrey Banks, appeals the judgment of the Court of Common Pleas of Seneca County convicting him of three counts of aggravated trafficking in drugs and sentencing him to three consecutive sentences of five years for an aggregate prison term of 15 years. On appeal, Banks argues that the trial court erred by: (1) improperly imposing consecutive sentences; (2) referring to the incorrect statutory sections when orally imposing his mandatory sentences; (3) handing down convictions that were against the manifest weight of the evidence; (4) reaching a finding of aggravating circumstance that was against the manifest weight of the evidence; and (5) allowing the State to refer to his involvement in drug activities during closing argument. Banks also contends that he was deprived of the effective assistance of counsel. For the reasons that follow, we affirm in part and reverse in part the trial court's judgment.

{¶2} On October 20, 2011, the Seneca County Grand Jury indicted Banks on three counts of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), a felony of the second degree. Each count included two specifications. The first specification related to the amount of the drugs involved and the second alleged that each count occurred within the vicinity of a school.

{¶3} The indictment arose from Banks' alleged sale of oxycodone to a confidential informant on three different occasions. Two of the counts were

alleged to have occurred in Banks' house at 449 South Jefferson Street in Tiffin, Ohio while the other count was alleged to have occurred at 73 Melmore Street, Tiffin, Ohio, which is a convenience store. The sales purportedly occurred on April 14, 2010, April 25, 2010, and May 6, 2010.

{¶4} The jury trial of this matter commenced on March 12, 2012 and ended on March 14, 2012. Detective Donald Joseph, of the Seneca County Sheriff's Office and the Metrich Drug Task Force, first testified as to his involvement in the controlled buys that led to the indictment. He indicated that on April 14, 2010, Craig Fell, a confidential informant, called Metrich and said that he could arrange the purchase of oxycodone drugs from Banks. Fell then traveled to the task force's office, where Detective Joseph and other members of the task force, pursuant to its protocols, searched Fell and his car for illegal drugs. The search produced no drugs. Detective Joseph also placed recording equipment on Fell, which allowed him to hear all of Fell's interactions.

{¶5} Detective Joseph testified that he set up surveillance outside of 449 South Jefferson Street that allowed him to observe Fell enter the residence. Once Fell was inside, Detective Joseph said that he heard Fell discuss the markings on the oxycodone pills with an unidentified male voice. Detective Joseph then observed Fell leave the residence and travel to another location where Fell handed

over 34 pills of oxycodone to the task force. Detective Joseph also searched Fell for other contraband and found nothing.

{¶6} After discussing the events of April 14, 2010, Detective Joseph authenticated several of the State's exhibits, including the following:

(1)   A bag containing the pills that Fell turned over;

(2)   A document containing the results of chemical tests run on the pills;

(3)   The audio recordings of the controlled buy and telephone calls between   Fell and Banks; and

(4)   The photograph line-up in which Fell identified Banks as the seller of the pills he purchased.

{¶7} Detective Joseph then testified that essentially the same process and events occurred on April 25, 2010. Detective Joseph observed Fell drive his car to 449 South Jefferson Street. Banks walked outside and met Fell at his car. Later, a car driven by Rachel Eckert arrived and both Fell and Banks walked to Eckert's car. Detective Joseph testified that he heard, via the surveillance equipment, the parties discuss the drug transaction. After the deal, Fell turned over 30 oxycodone pills to the task force. Detective Joseph authenticated the following exhibits regarding the April 25, 2010 buy:

(1)    A bag containing the pills that Fell turned over after the transaction;

(2)    A document containing the results of chemical tests run on the pills; and

(3)    The audio recordings of the controlled buy and telephone calls between Fell and Banks.

**{¶8}** Additionally, Detective Joseph discussed the events of May 6, 2010. Again, essentially the same process and events occurred. Detective Joseph observed Fell meet Banks at his residence. While Fell was there, Detective Joseph heard Banks arrange for Fell to travel to a convenience store at 73 Melmore Street, which is across the street from Calvert Elementary School. The drug task force members maintained surveillance after Fell and Banks traveled to the convenience store. The members heard Banks and Fell discuss the price of the pills over the surveillance equipment. After this sale, Detective Joseph and the other drug task force members arrested Banks. During his search of Banks, Detective Joseph found the marked money that was issued to Fell for the purchase.

**{¶9}** Detective Joseph authenticated the following exhibits relating to the May 6, 2010 controlled buy:

(1)    The money seized from Banks' pockets and the money issued to Fell for the controlled buy;

(2) A bag containing the pills that Fell turned over after the transaction;

(3) A document containing the results of the chemical tests run on the pills; and

(4) The audio recordings of the controlled buy and telephone calls between Fell and Banks.

**{¶10}** Finally, Detective Joseph testified to the distance between Calvert Elementary School and the locations where the controlled buys occurred. He stated that both Banks' house at 449 South Jefferson and the convenience store at 73 Melmore Street were within 1,000 feet of the school. Detective Joseph also indicated that the school was operating at the times of the controlled buys.

**{¶11}** On cross-examination, Detective Joseph admitted that he did not see the actual hand-to-hand transfer of the oxycodone pills and money during any of the controlled buys. He also admitted that Eckert was present at the April 14, 2010 and April 25, 2010 transactions since she was the supplier of the pills for Banks.

**{¶12}** In addition to Detective Joseph, several other police officers testified to their involvement in the three controlled buys. Their testimonies all were generally consistent with Detective Joseph's testimony.

{¶13} Seneca County Engineer Mark Zimmerman testified as to the distance between the locations of the purported drug sales and Calvert Elementary. He stated that he, along with other members of the Engineer's Office, surveyed the distances using GPS systems. As a result of the data collected, Engineer Zimmerman concluded that both Banks' residence at 449 South Jefferson Street and the convenience store at 73 Melmore Street were within 1,000 feet of the school. Dominic Helmstetter, the principal of Calvert Elementary School, also testified that the school was open and operating on the dates of the alleged drug sales.

{¶14} Fell was a critical witness for the State. He testified that he was retained as a confidential informant by the Metrich Drug Task Force as part of a plea bargain in an unrelated case. In regard to the April 14, 2010 drug buy, Fell testified that Banks set the price for the pills and the meeting place for the deal. This testimony was confirmed when the State played the recordings of two phone calls between Banks and Fell discussing these matters. Fell then indicated that when he went to Banks' house for the buy, both Banks and Eckert were present. During the transaction, Fell said he gave the money to Banks, who turned it over to Eckert. Fell also testified that Banks physically handed the oxycodone over to him. Also, Banks kept one of the pills as a type of finder's fee. Finally, Fell

authenticated the pills involved in this transaction as well as the photo line-up in which he identified Banks as the seller in the transaction.

{¶15} Fell then moved on to discussing the April 25, 2010 drug buy. Again, Fell testified that Banks set the price for the pills and the meeting place for the deal. This testimony was confirmed when the State played the recordings of two phone calls between Banks and Fell discussing these matters. Unlike the April 14, 2010 buy, this one did not occur inside of the house at 449 South Jefferson Street. Rather, when Fell arrived, Banks came out to meet Fell in his car. The two sat in the car and waited for Eckert to arrive.

{¶16} When Eckert arrived, she pulled her car in front of the house at 449 South Jefferson Street. Both Banks and Fell got out of Fell's car and went to Eckert's car, where the drug sale was closed. Fell testified that Banks counted the pills he received from Eckert and then handed them to Fell. Further, Fell indicated that he handed the money for the deal to Banks, who then turned it over to Eckert. Fell again authenticated the pills that were involved in this deal.

{¶17} Finally, Fell testified regarding the drug sale on May 6, 2010. Again, Banks set the price for the pills and the location of the buy. When Fell arrived at the residence at 449 South Jefferson Street, Banks came out and got into Fell's car. They drove to the convenience store at 73 Melmore Street. When they arrived, Fell parked outside the store and Banks handed over the oxycodone pills. After

handing over the pills, Banks went into the store. Upon Banks' return to the car, Fell handed over the agreed amount of money for the pills, including a $10 finder's fee for Banks.

{¶18} Throughout the transaction, Fell was wearing audio recording equipment. The recording was played for the jury and Fell explained the recording in the following exchange:

> Q: Then there was some more discussion about the price of the pills, sounded like it was "kind of high" but then someone said, "Well, I already told 'em I'd get 'em." Do you remember who said that?
>
> A: [Banks].
>
> Q: Do you know what he was talking about at that point?
>
> A: Uhm, getting the pills from somebody.
>
> Q: Okay. Then there are some more discussions about, there was an individual that said, "You run out, just call me. I can get them the next day. No more than $10 apiece. Eventually, they'll be seven fifty to $8 a piece." Do you remember that?
>
> A: It was [Banks] and he was getting the price down for the [oxycodone pills].
>
> Q: So he was offering to sell you [oxycodone] in the future?
>
> A: Yes. Trial Tr., p. 293-94.

Fell also authenticated the pills involved in this deal.

{¶19} On cross-examination, Fell admitted Eckert was present during the first two deals and that that no pills or money exchanged hands until after Eckert

arrived for the April 25, 2010 deal. However, Fell reiterated that Banks was always the person who handed over the drugs and who took the money from Fell.

{¶20} Barbara Hoover, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified regarding the chemical tests she ran on the pills handed over by Banks during the April 14, 2010 and April 25, 2010 transactions. Hoover said that based on the tests she conducted, she found that both sets of pills from these transactions contained oxycodone. Shervonne Bufford, another BCI forensic scientist, testified as to the pills handed over by Banks during the May 6, 2010 transaction. She stated that based on the tests she conducted, she found that the pills contained oxycodone. Further, both Hoover and Bufford testified the amount of the oxycodone in each sample was several times greater than the normal prescribed amount.

{¶21} Eckert also testified regarding her involvement in the April 14, 2010 and April 25, 2010 controlled drug buys. On both occasions, she said that Banks called her to inquire about the availability of oxycodone pills. Eckert said that she could provide the pills and then met Banks at the 449 South Jefferson Street address. She confirmed that the first drug deal occurred inside the residence at the address and that the second one occurred by her car, which was parked outside of the residence. Eckert indicated that she took the oxycodone pills and gave them to Banks. She also testified that she saw Banks physically hand the pills to Fell who

in exchange handed over the money to Banks. Eckert stated that Banks then turned over the money to her.

{¶22} On cross-examination, Eckert admitted that the State reduced her punishment in another case in exchange for her cooperation in the prosecution of Banks. She also acknowledged her extensive involvement in the drug trade, which has resulted in several convictions.

{¶23} Banks moved for an acquittal pursuant to Crim.R. 29(A), but the trial court denied the motion. Banks offered no evidence in his defense. During the State's closing argument, the assistant prosecuting attorney played various segments of the audio recordings from the purported drug deals. After playing one segment, the assistant prosecuting attorney made the following statement:

> You hear the defendant telling the informant, "You got that money. I'll just grab it and go jump in that car over there," to go get the drugs to transfer them to the informant.
> It's pretty clear in this audio, one, the defendant is getting different drugs from different sources. He's talking all about these b[------] he's getting drugs from. Trial Tr., p. 493.

At that point, Banks' trial counsel objected. But, the trial court overruled it on the basis that the prosecutor's statements were argument, and not evidence.

{¶24} The jury returned guilty verdicts on all three counts alleged in the indictment. It also found that all of the drug transactions occurred within 1,000 feet of a school. This matter then proceeded to sentencing. At the sentencing hearing conducted on March 15, 2012, evidence was offered that Banks had

previous felony convictions for forgery and theft, as well as multiple misdemeanors for drug and alcohol offenses.

> **{¶25}** In pronouncing Banks' sentence, the trial court stated the following:
>
> [T]he Court has looked at the factors and presumptions under Revised Code Section 2929.13(D). And after consideration of all factors, the Court finds that a prison term is not only consistent but mandatory in this case, but is consistent with the purposes and principals [sic] of felony sentencing under Revised Code 2929.11 * * *. Sentencing Tr., p. 18-19.

The trial court handed down three consecutive prison terms of five years, for an aggregate of 15 years. In its judgment entry of sentencing, the trial court enumerated the following findings in regard to its imposition of consecutive sentences:

> The Court finds that consecutive sentences are necessary to protect the public from future crime or to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public.
> The Court further finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct.
> The Court further finds that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant. (Docket No. 76, p. 3).

The trial court also ordered that the defendant "pay restitution in the amount of $635.00 to the [Metrich Drug Task Force]." (Docket No. 76, p. 6).

{¶26} Banks filed this timely appeal, presenting the following assignments

of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT IMPROPERLY SENTENCED THE DEFENDANT WHEN THE TRIAL COURT ORDERED CONSECUTIVE SENTENCES FOR EACH COUNT OF THE INDICTMENT.**

*Assignment of Error No. II*

**THE CONVICTION IN COUNT ONE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. III*

**THE CONVICTION IN COUNT TWO WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. IV*

**THE CONVICTION IN COUNT THREE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. V*

**THE FINDING OF AGGRAVATED CIRCUMSTANCES IN COUNT TWO OF THE TRANSACTION OCCURRING WITH 1000 FEET OF SCHOOL IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED WHEN IT FAILED TO SUSTAIN THE OBJECTION OF DEFENSE COUNSEL WHEN THE ASSISTANT PROSECUTING ATTORNEY MADE ARGUMENTS ABOUT APPELLANT'S INVOLVEMENT IN OTHER DRUG ACTIVITIES DURING**

**CLOSING ARGUMENTS IN VIOLATION OF THE APPELLANT'S RIGHTS UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

*Assignment of Error No. VII*

**GEOFFREY BANKS WAS DEPRIVED OF HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS RETAINED COUNSEL, IN CONTRAVENTION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION, WHICH SEVERELY PREJUDICED THE RIGHTS OF APPELLANT AND DID NOT FURTHER THE ADMINISTRATION OF JUSTICE.**

*Assignment of Error No. VIII*

**DURING SENTENCING, THE TRIAL COURT STATED THAT "AS A RESULT, THE COURT HAS LOOKED AT THE FACTORS AND PRESUMPTIONS UNDER REVISED CODE SECTION 2929.13(D). AND AFTER CONSIDERATION OF ALL FACTORS, THE COURT FINDS THAT A PRISON TERM IS NOT ONLY CONSISTENT BUT MANDATORY IN THIS CASE, BUT IS CONSISTENT WITH THE PURPOSES AND PRINCIPALS [SIC] OF FELONY SENTENCING UNDER REVISED CODE 2929.11 …" (SENTENCING TR. P18-19) SAID STATEMENT IS IN ERROR AND THEREFORE THE SENTENCING SHOULD BE VOID.**

{¶27} Due to the nature of Banks' assignments of error, we elect to address them out of order. We also elect to address the second, third, fourth, and fifth assignments of error together.

-14-

*Assignments of Error Nos. II, III, IV, & V*

**{¶28}** In his second, third, fourth, and fifth assignments of error, Banks asserts that his convictions on all three counts alleged in the indictment and the jury's finding that the April 25, 2010 controlled buy occurred within 1,000 feet of a school were against the manifest weight of the evidence. We disagree.

*Manifest Weight Standard*

**{¶29}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id*.

*Evidence Offered to Support Convictions*

{¶30} The State offered overwhelming evidence to support Banks' convictions on all three counts alleged in the indictment. A review of the record reveals that the State offered the following to prove Banks' guilt:

(1) Fell testified that during the April 14, 2010, April 25, 2010, and May 6, 2010 transactions, he physically handed money to Banks and that Banks physically handed oxycodone pills to him;

(2) Eckert testified that she personally observed this physical hand-off during the April 14, 2010 and April 25, 2010 transactions;

(3) Detective Joseph testified that after the May 6, 2010 transaction was completed and Banks was arrested, officers found the tracked money on his person;

(4) A variety of audio recordings in which Banks is heard discussing the transactions with Fell;

(5) The testimony of BCI's forensic scientists that the pills Fell received during the transactions were oxycodone and that they contained several times the normal amount for a medical prescription;

(6) The actual pills that Fell received during the transactions; and

(7) The consistent testimonies of the Metrich Drug Task Force members who were involved in the investigation.

In light of this extensive evidence, we are unable to find that the jury's findings of guilt on all three counts alleged in the indictment were against the manifest weight of the evidence.

*Evidence Offered to Support School Vicinity Finding*

**{¶31}** Again, the State offered overwhelming evidence to support the jury's finding that the April 25, 2010 drug buy occurred within 1,000 feet of Calvert Elementary School. Detective Joseph, Fell, and Eckert testified that the drug transaction occurred near Eckert's car, which was parked immediately outside of Banks' residence at 449 South Jefferson Street. According to Detective Joseph and Engineer Zimmerman, the house at 449 South Jefferson Street is within 1,000 feet of Calvert Elementary School. Meanwhile, Principal Helmstetter indicated that the school was open and operating on the dates that the drug buys occurred. In light of this evidence, we are unable to find that the jury's finding was a manifest miscarriage of justice. *See State v. Speers*, 11th Dist. No. 2003-A-2012, 2005-Ohio-4654, ¶ 27-30 (finding that sufficient evidence supported jury's finding that drug sale occurred within 1,000 feet of a school where detective testified as such); *State v. McDuffey*, 3d Dist. No. 13-03-41, 2003-Ohio-6985, ¶ 8 (same).

**{¶32}** Accordingly, we overrule Banks' second, third, fourth, and fifth assignments of error.

*Assignment of Error No. VI*

**{¶33}** In his sixth assignment of error, Banks contends that the trial court erred in allowing the assistant prosecuting attorney to purportedly state that Banks was involved in other drug transactions besides the ones involved in this matter. We disagree.

**{¶34}** We initially note that Banks has failed to cite any legal authorities to support his sixth assignment of error. This is violative of App.R. 16(A)(7), which requires that the appellate provide "[a]n argument containing [his] contention * * * with citations to the authorities * * * on which appellant relies." Although App.R. 12(A)(2) gives us the authority to consequently disregard this assignment of error, we elect to address it in the interests of justice. *See State v. Thomas*, 3d Dist. No. 10-10-17, 2011-Ohio-4337, ¶ 25.

**{¶35}** We read Banks' sixth assignment of error as alleging that the State engaged in prosecutorial misconduct during summation. The test for prosecutorial misconduct is "whether [the prosecutor's remarks] prejudicially affected substantial rights of the accused." *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). When applying this test in the context of closing statements, the courts have noted that "[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn * * *." *State v. Stephens*, 24 Ohio St.2d 76,

82 (1970); *see also State v. Siefer*, 3d Dist. No. 5-09-24, 2011-Ohio-1868, ¶ 46 ("In * * * closing statements, prosecutors are entitled to some latitude * * *."). Accordingly, we review the summation in its entirety to assess if "in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty, even without the improper remarks." *Siefer* at ¶ 46. If this question is answered in the affirmative, then there is no prosecutorial misconduct and no reversible error.

{¶36} Here, we find that the assistant prosecuting attorney's statement during summation was reasonably based on the evidence presented at trial. The recordings offered by the State, Fell's testimony, and Eckert's testimony indicated that Banks is intricately involved in the drug trade as a seller. Banks discussed his suppliers with Fell and he even told Fell that based on his involvement in the drug trade, he could get Fell whatever oxycodone pills he wanted. Based on this evidence, it was entirely reasonable for the assistant prosecuting attorney to remark that "[i]t's pretty clear in this audio [that] the defendant is getting different drugs from different sources." Trial Tr., p. 493.

{¶37} Accordingly, we overrule Banks' sixth assignment of error.

*Assignment of Error No. VII*

{¶38} In his seventh assignment of error, Banks argues that he was denied the effective assistance of counsel in violation of the United States and Ohio

Constitutions. In particular, Banks claims that his trial counsel's failures to introduce evidence that Eckert lived with him at the time of the purported deals and to continually object to the assistant prosecuting attorney's closing argument rise to the level of ineffective assistance of counsel. We disagree.

**{¶39}** An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *Id*. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103 (1997). Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone*, 2d Dist. No. 10564 (Dec. 13, 1989). "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" *Id*., quoting *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661 (1986).

**{¶40}** The introduction of evidence that Eckert lived in Banks' residence at 449 South Jefferson Street would not have changed the trial outcome. Such a fact would not reduce the import of the overwhelming evidence supporting convictions on the counts relating to the April 14, 2010 and April 25, 2010 drug transactions. Consequently, we find that the failure of Banks' trial counsel to introduce this evidence does not support a finding of ineffective assistance of counsel. Further, as explained above, the assistant prosecuting attorney's closing argument was properly based on the evidence presented at trial. As such, we cannot find that the failure of Banks' trial counsel to continually object to the closing argument rises to the level of ineffective assistance of counsel. *See State v. O'Dell*, 2d Dist. No. 22691, 2009-Ohio-1040, ¶ 51 (finding no ineffective assistance of counsel where trial counsel did not object during summation that was proper).

**{¶41}** Accordingly, we overrule Banks' seventh assignment of error.

*Assignment of Error No. I*

**{¶42}** In his first assignment of error, Banks claims that the trial court erred in handing down consecutive sentences. We disagree.

**{¶43}** A reviewing court must conduct a meaningful review of the trial court's imposed sentence. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8. Such review allows the Court to "modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and

convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Id.*

**{¶44}** R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender." R.C. 2929.11(A). In advancing these purposes, sentencing courts are instructed to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* Meanwhile, R.C. 2929.11(B) states that felony sentences must be both "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and consistent with sentences imposed in similar cases.

**{¶45}** Additionally, when sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A). However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade*, 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶ 8.

**{¶46}** R.C. 2929.14(C) governs the imposition of consecutive prison terms, and it provides, in pertinent part, as follows:

(c)(4)  If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court finds any of the following:

* * *

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.  R.C. 2929.14(C)(4)(c).

{¶47} Here, the trial court made the following findings regarding the imposition of consecutive sentences:

The Court finds that consecutive sentences are necessary to protect the public from future crime or to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public.

* * *

The Court further finds that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.  (Docket No. 76, p. 3).

A review of the record supports these findings.[1]  Banks has an extensive criminal history, complete with felony forgery and theft convictions, as well as misdemeanor drug and alcohol offenses, which indicates the continued threat he

---

[1] We note that the trial court also found that the harm caused by Banks' offenses "was so great or unusual that no single prison term * * * adequately reflects the seriousness of the defendant's conduct." (Docket No. 76, p. 3).  A review of the record reveals that no harm occurred in this matter.

-23-

poses to the public. In light of this, we cannot find that there is clear and convincing evidence that the trial court's imposition of consecutive sentences was improper.

**{¶48}** Accordingly, we overrule Banks' first assignment of error.

*Assignment of Error No. VIII*

**{¶49}** In his eighth assignment of error, Banks argues that since the trial court referred to the incorrect section of the Revised Code when orally imposing his mandatory sentence, the sentence is void. We disagree.

**{¶50}** We initially note that Banks' argument in support of his eighth assignment of error does not comply with App.R. 16(A)(7) because he has has failed to cite any legal authorities. Although App.R. 12(A)(2) gives us the authority to consequently disregard this assignment of error, we elect to address it in the interests of justice. *See Thomas*, 2011-Ohio-4337, at ¶ 25.

**{¶51}** Here, although the trial court referred to the improper section when orally imposing sentence, it did not cite to the improper section in its judgment entry of sentencing. Further, we can find no case in which an appellate court has vacated a sentence because the trial court failed to cite the appropriate Revised Code section when orally imposing a mandatory sentence. As a result, we find no reversible error based on the trial court's failure to cite the proper statutory section when orally imposing Banks' sentence.

{¶52} Accordingly, we overrule Banks' eighth assignment of error.

{¶53} In addition to Banks' assignments of error, we *sua sponte* address plain error in the trial court's order of restitution to the Metrich Drug Task Force. To have plain error under Crim.R. 52(B), there must be an error that is "obvious" and that affects "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*.

{¶54} R.C. 2929.18 governs a trial court's authority to order restitution. It provides, in relevant part, as follows:

> Financial sanctions may be imposed pursuant to this section, including, but not limited to, the following:

> Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. R.C. 2929.18(A)(1).

{¶55} In *State v. Dietrich*, 3d Dist. No. 1-10-76, 2011-Ohio-4347, we addressed a similar factual scenario in which the trial court imposed restitution to a drug task force after it had conducted a controlled buy targeting the defendant. There, we found that "a governmental entity advancing its own funds to pursue a drug buy through an informant" is not a victim under R.C. 2929.18(A)(1). *Id*. at ¶ 31. Accordingly, we found plain error and vacated the trial court's restitution order.

{¶56} Here, the trial court ordered Banks to "pay restitution in the amount of $635.00 to [the Metrich Drug Task Force]." (Docket No. 76, p. 6). Under *Dietrich*, the trial court was not authorized to issue this order since Metrich is not a victim under R.C. 2929.18(A)(1). As a result, it was plainly erroneous for the trial court to order restitution to benefit Metrich and we consequently vacate the restitution award.

{¶57} Having found no error prejudicial to Banks, in the particulars assigned and argued, in his first, second, third, fourth, fifth, sixth, seventh, and eighth assignments of error, but having found plain error in the trial court's award of restitution to the Metrich Drug Task Force, we affirm in part, and reverse in part, the trial court's judgment.

*Judgment Affirmed in Part*
*and Reversed in Part*

**WILLAMOWSKI and SHAW, J.J., concur.**